**STATE, Plaintiff-Appellee, v. SHARDELL, Defendant-Appellant.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 24511. Decided October 30, 1958.

John T. Corrigan, County Pros., Margaret Spellacy, Asst. County Pros., for plaintiff-appellee.

Paynter & Green, Richard Green, of Counsel, for defendant-appellant.

## OPINION

By KOVACHY, J:

This cause is before us on appeal on questions of law from a judgment of the Juvenile Court of Cuyahoga County wherein the defendant, Gary Shardell, a boy of sixteen, was found to be a delinquent child and placed on probation with orders "not to associate with his codelinquents." The record discloses that Gary had moved into a new neighborhood where he met new friends, two of whom met with him one evening in the basement of his home and discussed the subject of breaking and entering homes. Gary thought that a home in his former neighborhood would be a good place to break into and drew a diagram of it for the boys. These two boys thereupon left with intentions to seek out the home and upon arriving there found the occupants at home. They, thereupon, selected three other homes a few blocks beyond it which they entered and from which they stole $90.00 in cash. They then returned to Gary's home and reported what they had done. Gary told them that he had an alibi for them since they could say that they had been in his basement during all this time. The next day Gary went with one of the boys to get the money hidden in a churchyard. This they took back to Gary's home. Upon looking the money over, Gary noted some coins that he thought would be a valuable addition to his coin collection and appropriated $5.00 worth, which he exchanged for his own money. The money had been in a metal box. It was transferred into ping-pong boxes furnished by Gary. The metal box which had been stolen from one of the homes remained in the possession of Gary. Gary, in his conversation with one of the police officers, admitted that he knew that these boys had previously broken into a barber shop and also that he had accompanied them to help dispose of two guns taken during the time of the burglary of this barber shop. In his conversation with the probate officer of Juvenile Court, he stated, however, that he thought the boys were only "joking" about breaking into the homes and that the money was the proceeds of paper routes which one of the boys and his brother pursued. The record also shows that Gary had an Intelligence Quotient above the average,

The petition filed in the Juvenile Court charged Gary Shardell with unlawfully conspiring with other minors to break into and enter a home; that the other minors did break into and enter a home in the night season and did steal and carry away $90.00, a target pistol and a strong box; that the stolen property was taken to Gary Shardell's home; that Gary furnished two containers and retained the strong box; and that Gary received $5.00 in old coins, knowing the same to be stolen.

The six assignments of error can be consolidated into three as follows:

1. That the finding of delinquency was manifestly against the weight of the evidence;

2. That the defendant was prejudiced through the admission of hearsay evidence; and

3. That the constitutional rights of the defendant were violated by compelling him to testify.

\* \* \* \* \*

The Legislature of Ohio in §2151.35 R. C., inter alia, provided that hearings in Juvenile Court may be conducted in an **informal** manner; that the court shall permit a child to be represented by an attorney-at-law during any hearing before it; that the court shall hear and determine all cases of children without a jury; that the judgment rendered by the court shall not impose any of the civil disabilities ordinarily imposed by conviction, in that the child is not a criminal by reason of such adjudication; that the disposition "of a child under the judgment rendered or any evidence given in the court shall not be admissible as evidence against the child in any other case or proceeding in any other court, except that the judgment rendered and the disposition of such child may be considered by any court only as to the matter of sentence or to the granting of probation. Such disposition or evidence shall not operate to disqualify a child in any future civil service examination, appointment, or application."

Sec. 2151.02 R. C., in part, defines a delinquent child to be a child "(a) Who violates any law of this state \* \* \*."

Defendant-appellant herein maintains that since, in effect, he is charged with a crime, a felony if he were an adult, and since such violation is the sole basis upon which he was found to be a delinquent child, the proof of guilt should be beyond a reasonable doubt. With this contention we do not agree. The philosophy of the state, as declared in the sections above stated, is not to consider the child, although in violation of law, a criminal but rather to take him in hand for the purpose of protecting him from evil influences. The state thus becomes the parens patriae of the child on the theory that he needs protection, care and training as a substitute for parental authority that has broken down and failed to function. The proceedings instituted in a Juvenile Court, therefore, are not criminal in nature nor are they conducted with the object of convicting the minor of a crime and punishing him therefor. It is an informal hearing through the medium of Juvenile Court to determine whether the child needs intervention of the state as guardian and protector of his person. This is obviously to do away

with the usual and customary ceremony and procedure of a court trial in order to surround the child with an atmosphere of friendliness and good-will rather than one of hostility and faultfinding. It is thus proper for the judge to carry on a conversational type of investigation which is more conducive to eliciting the truth and arriving at an impartial, fair and more acceptable solution of the problem of the child involved.

It is stated in State v. Scholl, 167 Wisc. 504, 167 N. W. 830, 43 A. L. R. 2d 1146 as follows:

"The desideratum is to obtain, by the use of kindness and sympathy, the confidence of the child and of its parents if possible, to convince them that the judge and probation officer are friends and not the avengers of offended law. Good results are far more likely to be obtained in this way by the use of informal methods than by bringing them into a court conducted with the form and ceremony attendant upon trials for crime, where all the proceedings suggest that the law is about to be invoked to inflict punishment upon hardened malefactors."

We conceive the procedure to be civil rather than criminal in nature and to carry with it the juridicial connotations of a civil action. That being so, a mere preponderance of the evidence, in our opinion, is sufficient to warrant the finding of a minor to be a delinquent even though such determination involves the finding that a criminal statute of the state had been violated by the minor. The Supreme Court of Texas on pages 469 and 474 of Dendy v. Wilson, 142 Tex. 460, 179 S. W. 2d 269, stated the same proposition thus:

"* * * We think, however, that the whole Act discloses that the Legislature intended that proceedings instituted thereunder should be governed, as far as practicable, by the rules relating to civil procedure. * * *

"* * * If the objects of the Act are to be accomplished, the proceedings thereunder must necessarily be civil in nature, and while in some respects the orders or the judgment of the court may have the characteristics of a judgment in a criminal case, the customary rules of evidence in civil cases, developed through long experience as essential in arriving at the truth with reasonable certainty, must be followed."

Headnote 7 of People v. Lewis, 260 N. Y. 171, 183 N. E. 353, reads as follows:

"In juvenile delinquency proceeding, finding of fact must rest on preponderance of evidence adduced under rules of evidence applying in civil trials."

See, In re Contreras, 109 Cal. App. 2d 787, 241 P. 2d 631 (District Court of Appeals, California).

The record discloses ample evidence to sustain the judgment entered in this case by the Juvenile Court. Assignment of error number one is, accordingly, overruled.

In assignment of error number two, defendant claims he was prejudiced through the admission of hearsay evidence. The record shows that a police officer from Parma, the city in which defendant lives, testified from a composite police report containing information that he had

obtained by talking to the defendant and the other boys, not in the presence of the defendant, and matters obtained by another police officer during an independent investigation. Defendant's counsel throughout the testimony of this police officer objected to any evidence being presented by this witness of matters that were clearly hearsay. At the conclusion of the testimony by this witness, the court struck from the record "for the purpose of consideration by the court all hearsay evidence in all of the statements not made in the presence of Gary Shardell." We believe that it was proper for the trial judge to strike all hearsay evidence presented by this police officer, who at no time during the investigation of this case was under the direction or control of the Juvenile Court judge. The law affords a child charged with delinquency in Juvenile Court the right to be represented by an attorney-at-law. The Legislature clearly had in mind that although the hearings be informal in nature, the legal safeguards with respect to evidence be adhered to. Certainly a matter such as this is of the utmost importance to the child involved as well as his parents. Long experience has shown that the truth can be arrived at by competent and reliable firsthand information rather than by information that comes from the mouths of individuals who are not in court and who cannot for that reason be cross-examined to determine the accuracy or validity of their statements. We hold, therefore, that the Juvenile Judge acted properly in so removing such evidence from the record and that he has the training and experience to disregard incompetent evidence that has gotten into the record when considering the matter on its merits.

The Supreme Court of Nebraska in Krell v. Mantell, 157 Neb. 900, 62 N. W. 2d 308, stated in paragraph 2 of the syllabus:

"In a hearing before the Juvenile Court, the customary rules of evidence must be adhered to and a finding of fact may not rest upon hearsay."

See, In re Hill, 78 Cal. App. 23, 247 Pac. 591; Harry v. State, 246 Wisc. 69, 16 N. W. 2d 390; Ballard v. State, 192 S. W. 2d 329; People v. Lewis, 260 N. Y. 171, 183 N. E. 353.

The defendant consequently fails to maintain his claim of prejudice in this regard, and we therefore overrule assignment of error number two.

Was the constitutional right of the defendant violated by compelling him to testify? We do not think so. The Fifth Amendment to the Constitution of the United States in regard to this matter reads:

"No person * * * shall be compelled in any criminal case to be a witness against himself * * *. * * *."

The **Ohio Constitution, Article I, Section 10,** is identical in wording. Its inhibitions clearly pertain to compelling a person to testify to matters that relate to or may involve one in a criminal prosecution. There was no such possibility in the case of Gary Shardell because the spirit as well as the letter of the law under which this hearing was conducted does not consider the proceedings criminal in nature. The defendant here was subjected to a friendly and benevolent investigation by a court instituted not to find him guilty of crime nor to punish him for any

transgression against law but rather to determine the conditions under which he lives, the influences brought to bear upon him by his association with boys of his age, and the parental control over him. The sole object of these proceedings was to determine whether he was under such evil influences as to require the court to exercise control over him with the view of assisting him to become a good and useful citizen of the community. It was well-stated at pages 54 and 56 in Commonwealth v. Fisher, 213 Pa. 48, 62 Atl. 198, as follows:

" * ** the act is not for the trial of a child charged with a crime, but is mercifully to save it from such an ordeal, with the prison or penitentiary in its wake, if the child's own good and the best interests of the state justify such salvation. * * * the act is but an exercise by the state of its supreme power over the welfare of its children * * *.

"* * * Every statute which is designed to give protection, care, and training to children, as a needed substitute for parental authority and performance of parental duty, is but a recognition of the duty of the state, as the legitimate guardian and protector of children where other guardianship fails. No constitutional right is violated * * *."

See, In re Mont. 175 Pa. Super. 150, 103 A. 2d 460; Lindsay v. Lindsay, 257 Ill. 328, 100 N. E. 892; Freestone v. State, 98 Ind. App. 523, 176 N. E. 877; State, ex rel. Palagi v. Freeman, 81 Mont. 132, 262 P. 168; Mill v. Brown, 31 Utah 473, 88 P. 609.

We hold, accordingly, that Gary Shardell was not charged with crime per se, was not prosecuted for a criminal offense, nor subjected to questioning for the purpose of retribution by the state for any wrong committed by him in these proceedings. His constitutional rights with respect to self-incrimination were therefore not invaded and the claim so made must be and herewith is overruled.

The judgment, accordingly, is sustained. Exceptions. Order see Journal.

SKEEL, PJ, HURD, J, concur.