## In re Agler.

(No. 68-620—Decided July 9, 1969.)

*Messrs. Shaw, Clemens, Williams & Hine* and *Mr. Douglas W. Brown,* for appellant.

*Mr. John W. Weaner,* prosecuting attorney, and *Mr. John E. Zimmerman,* for appellee.

HERBERT, J.   The Juvenile Court stands as a monument to the enlightened conviction that wayward boys may become good men and that society should make every effort to avoid their being attainted as criminal before growing to the full measure of adult responsibility.   Its existence, together with the substantive provisions of the Juvenile Code, reflects the considered opinion of society that childish pranks and other youthful indiscretions, as well as graver

offenses, should seldom warrant adult sanctions and that the decided emphasis should be upon individual, corrective treatment.

As early as 1857, the General Assembly made provision for a special disposition of infants accused of crime. In legislation establishing houses of refuge, it was added that "the grand jurors may, in their discretion, instead of finding an indictment against the accused [infant], return to the court that it appears to them that the accused is a suitable person to be committed to the guardianship of the directors of the house of refuge." (54 Ohio Laws 163, 166, Section 8.) This provision remained, in substance, at the foundation of Ohio's juvenile law for over 80 years (*see State v. Warden* [1955], 162 Ohio St. 593, 124 N. E. 2d 817) until a major revision of the Juvenile Code in 1937, which conferred exclusive jurisdiction over minors upon the Juvenile Court. (117 Ohio Laws 520, 524, 529.) It was attacked as a denial of the constitutional right to trial by jury in 1869, in the case of a 14-year old accused of burning a barn and committed upon the finding of the grand jury, and upheld. *Prescott v. State*, 19 Ohio St. 184. Therein, the court described the nature of a juvenile proceeding:

"* * * It is neither a criminal prosecution, nor a proceeding according to the course of the common law, in which the right to a trial by jury is guaranteed.

"The proceeding is purely statutory; and the commitment, in cases like the present, is not designed as a punishment for crime, but to place minors of the description, and for the causes specified in the statute, under the guardianship of the public authorities named, for proper care and discipline, until they are reformed, or arrive at the age of majority. The institution to which they are committed is a school, not a prison; nor is the character of their detention affected by the fact that it is also a place where juvenile convicts may be sent, who would otherwise be condemned to confinement in the common jail or the penitentiary." (*Id.*, at 187-88.) See also *Roth v. House of Refuge* (1869), 31 Md. 329.

The observations of the court in *Prescott* have been

reflected in the tenor of juvenile proceedings in Ohio for over 100 years. *See Cope* v. *Campbell* (1964), 175 Ohio St. 475, 196 N. E. 2d 457; *In re Darnell* (1962), 173 Ohio St. 335, 182 N. E. 2d 321. In this period, there have been numerous reforms and refinements in juvenile law. In 1902, the first Ohio Juvenile Court was established in Cuyahoga County (95 Ohio Laws 785), and the immediately succeeding General Assemblies enacted extensive, substantive, juvenile legislation and conferred juvenile jurisdiction on courts throughout the state. (97 Ohio Laws 561; 98 Ohio Laws 314; 99 Ohio Laws 192.) With the 1937 amendments, *supra*, the Ohio Juvenile Courts functioned under a model act, not unlike Juvenile Codes adopted in other states. *See* Whitlatch, *The Juvenile Court*, 18 W. Res. L. Rev. 1239, 1244-45 (1967). Subsequent enactments have added refinement, but the essential elements of the Juvenile Court system of dealing with children embodied in this act remain unchanged.

Judge Whitlatch, an Ohio juvenile jurist, describes the Juvenile Court as ''an uneasy partnership of law and social work.'' *The Juvenile Court, supra*, at 1246. This partnership is formed with a purpose to inquire into youthful misconduct, misdirection, or mistreatment, and provide an appropriate remedy or course of correction in an unceremonious, but institutionalized and thus reliable manner. Accordingly, the original jurisdiction of the court over children, whether involving an issue of support for a neglected or dependent youngster or the disposition of a murder charge, is exclusive. (Section 2151.23, Revised Code.) A child is not a criminal by reason of any Juvenile Court adjudication, and civil disabilities ordinarily following conviction do not attach. Hearings are informal, non-public and separate from those involving adults. (Section 2151.35, Revised Code. ) Records are non-public. (*See* Section 2151.18, Revised Code.) Finally, detention of children, even temporary, must be separate from adult facilities. (*E. g.*, Section 2151.34, Revised Code.)

The Ohio Juvenile Code has long provided for service of notice of complaints against children upon parents and

guardians, and such service is jurisdictional. Sections 2151.28 and 2151.29, Revised Code. *In re Frinzl* (1949), 152 Ohio St. 164, 87 N. E. 2d 583. Section 2151.35 assures the right to representation by counsel, and in the event of indigency, counsel may be appointed to represent the child and his parents under a 1968 amendment enacting Section 2151.351, Revised Code. Jurisdiction to review the judgments of Juvenile Courts is conferred upon the Courts of Appeals by Section 2501.02, Revised Code. Such refinements are the contribution of the law partner to the sociolegal enterprise of the Juvenile Court system, intended to secure due process to children and their parents.

The infusion of the foregoing due process features into the hybrid juvenile procedure has not resulted in the creation of a parallel system of criminal courts for Ohio children. Paragraph one of the syllabus of *Cope* v. *Campbell, supra,* reads:

"Proceedings in the Juvenile Court are civil in nature and not criminal. Section 2151.35, Revised Code, implies protection of the minor and not punishment."

Section 2151.35 provides in part: "The court shall hear and determine all cases of children without a jury." In *Cope,* this court held that the provisions of the Constitutions of the United States and of Ohio relating to trial by jury, indictment and appointment of counsel in criminal cases, are inapplicable to juvenile proceedings. See also *In re Darnell, supra.* Statutory provision for appointment of counsel has since been enacted (Section 2151.351, *supra*), but the essentially civil nature of juvenile proceedings remains unaltered by the General Assembly.

*In re Gault,* 387 U. S. 1, presented an unfortunate and clear example of the deficient administration of juvenile justice. Therein, a 15-year-old boy was adjudged delinquent and committed to the Arizona State Industrial School until reaching majority, for alleged misconduct which would have been punishable by a fine or two-months imprisonment if committed by an adult. Neither parent nor child was informed by notice of the factual basis of the

charge which might have enabled preparation of a defense, nor were they afforded counsel. At the hearing, evidence in support of the charge was adduced solely by patent hearsay and the compulsory testimony of the minor involved. The Supreme Court of the United States held such procedure constitutionally defective. Emphasizing that it was "here concerned only with a proceeding to determine whether a minor is a 'delinquent' and which may result in commitment to a state institution," the court specifically held the privilege against self-incrimination applicable to such proceeding. (387 U. S., at 44, 50.) It also held that, in such a proceeding, the juvenile and his parents must be afforded written notice of specific charges or factual allegations in time to prepare to meet such issues, the assistance of counsel, and the rights of confrontation and cross-examination. (387 U. S., at 33-34, 41, 57.)

In *Gault*, it is apparent that the court intended to impair statutory juvenile procedures only to the extent thought necessary to assure the essential fairness of such proceedings. It said: "the observance of due process standards, intelligently and not ruthlessly administered, will not compel the states to abandon or displace any of the substantive benefits of the juvenile process." (387 U. S. at 21.) It specifically mentioned treatment of juveniles separate from adults, classification of juvenile offenders as noncriminal, and confidentiality of juvenile records as features to be preserved. (387 U. S., at 22-25.) It also observed:

"While due process requirements will, in some instances, introduce a degree of order and regularity to Juvenile Court proceedings to determine delinquency, and in contested cases will introduce some elements of the adversary system, nothing will require that the conception of the kindly juvenile judge be replaced by its opposite, nor do we here rule upon the question whether ordinary due process requirements must be observed with respect to hearings to determine the disposition of the delinquent child." (387 U. S., at 27.)

Reinforcing that a parallel system of juvenile criminal courts was unintended, the court quoted from its earlier opinion in *Kent* v. *United States,* 383 U. S. 541, 562:

"'* * * 'We do not mean * * * to indicate that the hearing to be held must conform with *all* of the requirements of a criminal trial or even of the usual administrative hearing [*semble*]; but we do hold that the hearing must measure up to the essentials of due process and fair treatment.'" (Emphasis added.) (387 U. S., at 30.)

The course is no longer open to this court to determine constitutional features of Ohio Juvenile Court procedures which have been decided specifically by the Supreme Court of the United States in *Gault, supra.* Accordingly, so much of the second paragraph of the syllabus in *Cope* v. *Campbell, supra* (175 Ohio St. 475), as states that appointment of counsel in delinquency cases (for indigents, where such right is not clearly waived) is not constitutionally requisite, is impliedly overruled by *In re Gault, supra,* at 41-42. *See* Section 2151.351, Revised Code. It is also clear that the privilege against self-incrimination applies to a juvenile charged with delinquency. *In re Gault, supra,* at 44, 50. *Contra, State* v. *Shardell* (1958), 107 Ohio App. 338, 153 N. E. 2d 510 (fourth paragraph of syllabus overruled by implication by *In re Gault, supra*). It would appear that the prevailing Ohio statutory provisions for notice of charges and hearing comport with the requirements of due process as interpreted by *In re Gault, supra,* at 31-34, provided the factual basis of the allegation of delinquency is stated therein. *See* Sections 2151.25, and 2151.27 through 2151.30, Revised Code. Finally, there is nothing in the Ohio Juvenile Code or the decisions of this court which authorizes the utilization of hearsay evidence or licenses a denial of the right of confrontation in delinquency proceedings, announced as constitutionally forbidden by *In re Gault, supra,* at 42-57.

In the instant case, Donald Agler urges that his delinquency determination and commitment result from proceedings in Juvenile Court which fail to meet the constitutional standard established by *In re Gault, supra.* The

record shows that a written citation, together with a copy of the complaint alleging delinquency and setting forth the factual basis of the charge, was served more than two months in advance of the hearing herein. Donald and his parents were represented by counsel who filed motions more than six weeks before hearing and who has served at all subsequent stages of the case. The hearing transcript contains no suggestion of hearsay, and, indeed, the Juvenile Court struck from the record a probation officer's report which may have contained hearsay. The evidence of malicious destruction was adduced by the testimony of three accomplices who were cross-examined. Donald did not testify.

Counsel for Donald does not claim that the proceeding was constitutionally or otherwise defective in the foregoing respects. These points are mentioned because they are the points specifically determined in *In re Gault, supra.* They are also the only matters specifically decided in that case.

What is contended is that children charged with delinquency and subject to commitment to a state institution are constitutionally entitled to indictment and trial by jury, and that the required standard of proof against them is proof beyond a reasonable doubt. It is conceded that these questions were not decided in *Gault*, but it is argued that the *rationale* of *Gault* requires their acceptance.

With respect to indictment and trial by jury in delinquency proceedings, this court has lately considered the requirements of both federal and Ohio constitutional provisions respecting rights of persons and specifically decided otherwise. *Cope* v. *Campbell, supra; In re Darnell, supra.* We note that one state supreme court has recently accepted appellant's rationale herein. *In re Urbasek* (1967), 38 Ill. 2d 535, 232 N. E. 2d 716. See also *Peyton* v. *Nord* (1968), 78 N. M. 717, 437 P. 2d 716. Other courts have declined. *E. g., In re Wylie* (D. C. App. 1967), 231 A. 2d 81; *Shone* v. *State* (Me. 1968), 237 A. 2d 412. On the constitutional issues presented, we have reconsidered our decisions in light of *In re Gault, supra,* and still hold that indictment or

trial by jury are not requisite in delinquency proceedings, either as matters of constitutional guarantees or sound public policy.

In our opinion, the thrust of *Gault* is that the disposition, possible and probable, of children involved in delinquency proceedings constitutionally warrants procedures found necessary to assure the essential fairness of trials or hearings with any substantial binding or coercive effect. The rights extended to delinquency proceedings by *Gault* are not peculiar to criminal trials, but prevail generally in civil and administrative proceedings. Notice and an opportunity to be heard are basic to civil jurisdiction. *See In re Gault, supra,* at 33-34 and n. 53. The privilege against self-incrimination prevails independently of an actual criminal prosecution, dependent only upon the possibility of prosecution arising from the subject matter for which it is asserted. *Murphy* v. *Waterfront Commission,* 378 U. S. 52. The right of confrontation does no more than secure an opportunity for cross-examination correlative to the hearsay rule, which is designed to assure reliable evidence in all kinds of proceedings. The right to be represented by counsel is common to civil proceedings, although the right of indigents to appointed counsel is not. In this last respect, juvenile proceedings present a special problem because the child whose interests are drawn into question is not *sui juris,* and is, both legally and as a practical matter, unable to take responsibility therefor. Moreover, the parents or guardian do not always represent the child's best interests and are sometimes adverse thereto. This special problem requires a special solution to assure the constitutional fairness of adjudication, reached by provision for counsel at state expense. *Cf., Griffin* v. *Illinois,* 351 U. S. 12.

*Gault* involved a delinquency adjudication without indictment and without trial by jury. There was at least an opportunity for the court to speak on those issues and it did not. Undoubtedly, it was aware of such questions and was confronted with the same difficulties which face this court now. That is, Juvenile Court proceedings are essenti-

ally noncriminal, and the infusion into such procedure of the full inventory of rights or features provided in criminal cases, other than those essential to due process generally, would predictably destroy the individualized, remedial nature of adjudication therein. We find this same concern in the statements of the court in *Gault*, set out above. (387 U. S., at 21, 27, 30.)

Justice Harlan's comments in *Gault* relating to self-incrimination, confrontation and cross examination have particular applicability to indictment and trial by jury:

"At the least, it is plain that these additional requirements would contribute materially to the creation in these proceedings of the atmosphere of an ordinary criminal trial, and would, even if they do no more, thereby largely frustrate a central purpose of these specialized courts. Further, these are restrictions intended to conform to the demands of an intensely adversary system of criminal justice; the broad purposes which they represent might be served in juvenile courts with equal effectiveness by procedural devices more consistent with the premises of proceedings in those courts." *Id.*, at 75-76 (separate opinion concurring in part and dissenting in part).

We need look no further than equity jurisdiction to determine that trial by jury, guaranteed by the federal and most state constitutions, is not an essential element of due process in all adjudicatory proceedings. *Cf. Shone* v. *State, supra* (237 A. 2d 412). Certainly, an equity decree can be as intensely coercive as most litigants are likely to find a juvenile adjudication. Furthermore, we can perceive no benefit worthy of destroying a juvenile's traditional entitlement to special status which might accrue to an alleged delinquent from a jury trial. Unquestionably, fair adjudication can be had for a child represented by counsel, from a judge applying proper rules of evidence and a proper standard of proof. There exists a right of appeal to remedy error and reviewing courts may exercise vigilance over arbitrary determinations of delinquency. (Section 2501.02, Revised Code.)

We are unprepared to label delinquency a capital or

otherwise infamous crime so as to require indictment in delinquency proceedings. *See* Article VI, Amendments, U. S. Constitution; Section 10, Article I, Ohio Constitution. To do so would only trade the "civil" label-of-convenience, criticized in *Gault* (387 U. S., at 50), for a similar "criminal" label in talismanic substitution of reason. The very purpose of the Juvenile Code is to avoid treatment of youngsters as criminals and insulate them from the reputation and answerability of criminals. Section 2151.35, Revised Code, provides in part: "The judgment rendered by the court * * * shall not impose any of the civil disabilities ordinarily imposed by conviction, in that the child is not a criminal by reason of such adjudication, nor shall any child be convicted of any crime in any court, except as provided [by the recognizance procedure for full criminal trial as an adult]." Like indictment, the privacy of juvenile proceedings in themselves offers protection to a child from the adverse effect of groundless charges upon his reputation. With such protection, there is no necessity to interpret an allegation of delinquency to charge an infamous crime in order to secure to children due process of law.

For these reasons, we reaffirm our previous decisions that delinquency proceedings in Juvenile Court do not require indictment or trial by jury under the Fifth, Sixth and Fourteenth Amendments to the Constitution of the United States, or Sections 5 and 10 of Article I of the Constitution of Ohio.

There remains for consideration the issue of the correct standard of proof to be applied in delinquency proceedings.

At the outset, it must be noted that the burden of the state to prove a criminal defendant guilty on all elements of an offense beyond a reasonable doubt springs not from the prescription of a constitution, although it is deeply rooted in our common-law history. In Ohio, the criminal standard of proof is expressed by statute. (*See* Sections 2938.08 and 2945.04, Revised Code.) While this court has not passed upon such evidentiary standards directly,

there is Ohio authority that the customary rules of evidence governing civil actions and proof by a preponderance of the evidence must be followed in juvenile proceedings. *State* v. *Shardell, supra.*

Reason and logic supported the 1958 *Shardell* decision in its conclusion that the proper burden of proof corresponded to that which applied in civil cases. Then, as now, the majority of states viewed Juvenile Court proceedings as "civil in nature" and delinquents as other than criminals, and applied the preponderance of the evidence standard.[1] Ohio's statutes clearly stated the noncriminal

---

[1]The standard of proof in delinquency proceedings varies among the American jurisdictions in which there are reported cases on the issue. These authorities may be classified as follows:

*Preponderance of the Evidence*

1. Texas. *In re Gonzales* (Civ. App. 1959), 328 S. W. 2d 475; *State* v. *Ferrell* (Civ. App. 1948), 209 S. W. 2d 642; *Robinson* v. *State* (Civ. App. 1947), 204 S. W. 2d 981. *Accord, Stanley* v. *Whitney* (Civ. App. 1963), 259 S. W. 2d 636; *Sutter* v. *Yutz* (Civ. App. 1949), 223 S. W. 2d 554; *State* v. *Thomasson* (1955), 154 Tex. 151, 275 S. W. 2d 463.

2. New York. *People* v. *Lewis* (1932), 260 N. Y. 171, 183 N. E. 353, 86 A. L. R. 1001, *cert. denied* 289 U. S. 709; *In re Ronny* (Family Ct. 1963), 40 Misc. 2d 194, 242 N. Y. S. 2d 844; *In re Anon.* (Family Ct. 1962), 37 Misc. 2d 827, 238 N. Y. S. 2d 792. *Contra, In re Rich* (Dom. Rel. Ct. 1949), 193 Misc. 542, 86 N. Y. S. 2d 308; *People* v. *Anon.* (County Ct. 1967), 53 Misc. 2d 690, 279 N. Y. S. 2d 540; *In re Madik* (1931), 233 App. Div. 12, 251 N. Y. S. 765 (beyond reasonable doubt).

3. Washington. *State, ex rel. Berry,* v. *Superior Court* (1926), 139 Wash. 1, 245 P. 409, 45 A. L. R. 1530. *Accord, State, ex rel. Lewis,* v. *Superior Court* (1957), 51 Wash. 2d 193, 316 P. 2d 907.

4. United States (Alabama). *United States* v. *Borders* (D. C. Ala. 1958), 154 F. Supp. 214, *affirmed* 256 F. 2d 458.

5. Ohio. *State* v. *Shardell* (1958), 107 Ohio App. 338, 153 N. E. 2d 510.

6. District of Columbia. *In re Wylie* (C. A. D. C. 1967), 231 A. 2d 81 (post-*Gault*); *In re Elmore* (C. A. D. C. 1966), 222 A. 2d 255; *In re Bigesby* (C. A. D. C. 1964), 202 A. 2d 785. *Accord, In re McDonald* (D. C. App. 1959), 153 A. 2d 651.

7. California. *In re Castro* (1966), 243 Cal. App. 2d 402, 52 Cal. Rptr. 469; *In re Contreras* (1952), 109 Cal. App. 2d 787, 241 P. 2d 631.

In addition to the foregoing authorities, decisions in 14 other jurisdictions are persuasive that the standard of a preponderance of the evidence is applied in delinquency proceedings. Among these are

nature of such proceedings and were not offended by the judicial adoption of a civil standard of proof in conformity with the civil nature of the proceedings. It seems clear, however, that *In re Gault* demands the further categorization of juvenile offenders, for *Gault* retained as desirable the policy of special and protective treatment of juveniles but rejected the view that those juvenile proceedings which could culminate in commitment to a state institution were without the application of certain constitutional guarantees theretofore withheld in many jurisdictions. In short, committable juvenile offenders are to be treated as neither civil nor criminal defendants. They represent a

---

Connecticut, Delaware, Idaho, Iowa, Kansas, Maine, Maryland, Mississippi, Nebraska, New Hampshire, New Jersey, North Dakota, Pennsylvania, and Vermont. Of these, only Maine appears to have considered the question after *In re Gault*, 387 U. S. 1. *See Shone* v. *State* (1968), 237 A. 2d 412.

*Clear and Convincing Evidence*

1. Arizona. *Application of Gault* (1965), 99 Ariz. 181, 407 P. 2d 760, *rev'd on other grounds* sub nom. *In re Gault* (1967), 387 U. S. 1. *See Caruso* v. *Superior Court* (1966), 100 Ariz. 167, 412 P. 2d 463 (dependency).

2. Oregon. *See In re Cutts* (1961), 229 Ore. 33, 366 P. 2d 179 (abandonment—"clear and cogent proof").

*Beyond a Reasonable Doubt*

1. Virginia. *Jones* v. *Commonwealth* (1946), 185 Va. 335, 38 S. E. 2d 444.

2. Illinois. *In re Urbasek* (1968), 38 Ill. 2d 535, 232 N. E. 2d 716 (post-*Gault*). *But see Chicago* v. *Joyce* (1967), 38 Ill. 2d 368, 232 N. E. 2d 289 (violation of municipal ordinance proved by "clear preponderance"—standard approved in *Urbasek, supra*). *Cf. People* v. *Hinton* (1946), 330 Ill. App. 130, 70 N. E. 2d 261 (West's headnote 3: neglected child—"clear and * * * to a degree of certainty").

3. Colorado. *People, ex rel. Rodello,* v. *District Court* (Sup. Ct. 1968), 436 P. 2d 672 (post-*Gault*).

4. New Mexico. *See Peyton* v. *Nord* (1968), 78 N. M. 717, 437 P. 2d 716 (post-*Gault*). *But see In re Santillanes* (1943), 47 N. M. 140, 138 P. 2d 503.

In addition to the foregoing authorities, Nevada has considered the issue after *In re Gault, supra*, but did not decide a standard, finding less than a preponderance of the evidence in support of the case. *In re John* (Nev. 1968), 446 P. 2d 989. It thus remains an open question in that state.

special type of offender whose adjudicatory treatment lies somewhere in between.

As noted, *Gault* dealt only with juveniles facing commitment and deprivation of liberty. However, we find in this case of first impression that the full protection of alleged delinquents empirically demands a broader application of any rule regarding standard of proof. As noted by the *Gault* majority (387 U. S., at 23-25), long experience has shown that despite commendable efforts to the contrary, the suffering of a judgment of delinquency can have a lasting detrimental effect upon a child's future. This is not to say that the noble experiment has failed, but rather that one of the hopes attendant to its development has not been fully realized. For this reason, we conclude that any determination of a proper standard of proof in delinquency hearings must respond to the aspects of both deprivation of a child's liberty and the effect upon his future.

With this in mind, we conclude that the burden of proof in those juvenile hearings which can result in the child's being adjudged a delinquent, irrespective of disposition, need not be beyond a reasonable doubt, but must be greater than a mere preponderance of the evidence. The standard of proof which lends itself most logically to this view of such proceedings, and which will best preserve the special nature thereof, is that of clear and convincing evidence of the truth of the allegations contained in the complaint. Moreover, the standard of clear and convincing evidence was that adopted by the Supreme Court of Arizona in *Gault* (*Application of Gault*, 99 Ariz. 181, 407 P. 2d 760), and left undisturbed by the Supreme Court of the United States in reviewing that decision. *In re Gault, supra.*

We need not explore the question of whether our modern juvenile law has its roots in chancery or whether it is solely a creature of statute with little or no basis in the common law. *See* Young, *A Synopsis of Ohio Juvenile Court Law*, 31 U. Cinc. L. Rev. 131, 132-36 (1962). The clear and convincing standard of proof is familiar to our courts, has a sound historical foundation and represents

that degree of proof which, in our opinion, comports with the clear implications of *Gault*.

In this case, the record is not entirely clear as to the standard of proof applied by the Juvenile Court. The Juvenile Judge stated in a discussion with counsel at the conclusion of the hearing: "I don't think it is to be treated as you are treating it as a criminal proceeding." The inference that the civil standard of a preponderance of the evidence was applied is thereby supported, and the prosecutor in his brief agrees that it was. Since we hold that charges of delinquency must be proved by clear and convincing evidence, the adjudication of delinquency and commitment herein must be reversed and the cause remanded to the Juvenile Court. However, it does not appear that a new hearing, with the presentation of evidence, will be required as the Juvenile Judge, with the aid of the transcript of the original hearing and having heard and seen the witnesses testify, may determine whether proof of Donald's alleged delinquency was by clear and convincing evidence.

For these reasons, the judgment of the Court of Appeals affirming the adjudication of delinquency is reversed and the cause is remanded to the Juvenile Court for further proceedings consistent with this opinion.

*Judgment reversed.*

TAFT, C. J., MATTHIAS and O'NEILL, JJ., concur.[2]

DUNCAN, J., concurs in paragraph one of the syllabus and in the judgment.

SCHNEIDER, J., dissenting. I concur in paragraph two of the syllabus.

However, I dissent from paragraph three and from the judgment. If we are indeed bound by the "implications" of a non-*per curiam* decision of the Supreme Court of the

---

[2]This decision was made after the death of JUSTICE ZIMMERMAN and before the appointment of a successor.

United States, we are not free to affirm *State* v. *Butler* (68-623, ante, 55) (see dissent by Justice Keating in *People* v. *Kulis*, 18 N. Y. 2d 318, 221 N. E. 2d 541), and we are not free to decide *State* v. *Pyle* (69-205, ante, 64).

Moreover, I fail to grasp the reasoning which designates a standard of proof (or the right to counsel) as more constitutionally fundamental to justice than the right to a trial by jury or the right to a public trial. If the latter elements are a *sine qua non* to a fair trial for an adult accused, it follows that they are equally so to a juvenile whose possible deprivation of liberty grants him, under *In re Gault*, 387 U. S. 1, correlative constitutional status.

Finally, I am persuaded by the following argument, made in the brief *amicus curiae* of the National Council of Juvenile Court Judges and the Ohio Association of Juvenile Court Judges, filed in the instant case:

"In the first place, it is very hard to draw a precise line between the various degrees of proof. Proof by a preponderance of the evidence is defined as that *quantum* of proof that has more convincing force, and produces in the mind of the trier of fact belief that what is sought to be proved is more likely true than not true. . . . On the other hand, these same authors define proof beyond a reasonable doubt as being such as the trier of fact would be willing to rely and act upon in the most important of his own affairs. . . . These are rather subtle differences at best, and the problem does not appear to be of constitutional dimensions." (Emphasis supplied.)

Again, *amicus curiae* contends that ". . . in this case it is not clear *what* standard of proof was applied by the juvenile judge, and even if the judge were following Ohio law and viewing the case as a civil one in which the preponderance test should be applied, it is quite possible from the evidence before him that he was satisfied beyond a reasonable doubt as to the juvenile's delinquency. In any event, it certainly cannot be said, as a matter of law, that the state of Ohio has not proved its case by 'clear and convincing' evidence.

86

"The Ohio standard [of proof by preponderance] is supported by precedent which dates back for centuries into the beginnings of the Juvenile Court as an institution, and it is also the standard in the majority of states. If the Supreme Court of the United States had wanted to change the Ohio standard of proof, it had ample opportunity, especially in the *Whittington case* [391 U. S. 341], where the Ohio Juvenile Court Act was directly before it, and the Ohio Legislature could amend that Act to provide a different standard if it so desired. . . ."