DECISION
This is an appeal by appellant, Pee Jay Cundiff, from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, overruling appellant's objections to a magistrate's decision.
On August 28, 1998, a complaint was filed by a Franklin County probation officer, alleging that appellant was a delinquent child, having committed the offense of assault, in violation of R.C. 2903.13. An adjudicatory hearing was conducted before a magistrate on September 8, 1998. At the hearing, counsel for the appellant made a motion for a jury trial and a motion requesting the magistrate to declare R.C. 2903.13(2)(A) unconstitutional. The magistrate overruled the motions and, by decision filed September 8, 1998, found that appellant committed the charged offense.
On October 19, 1998, appellant filed objections to the magistrate's decision. The state subsequently filed a memorandum contra appellant's objections. By decision rendered on March 12, 1999, the trial court overruled the appellant's objections.
On appeal, appellant sets forth the following five assignments of error for review:
 I. The Trial Court erred in denying Defendant-Appellant's Motion demanding a trial by an impartial jury in violation of Defendant-Appellant's constitutional rights pursuant to the Sixth Amendment of the United States Constitution and the Ohio Constitution, Article I, Sections 5 and 10, the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) denial of the fundamental right to an impartial jury; (2) fundamental unfairness; and (3) denial of the Equal Protection of the law.
 II. Trial Court erred in denying Defendant-Appellant's Motion demanding that the Court declare Juvenile Rule 27(A) and Ohio R.C. 2151.35(A), which require the Court to hear and determine all cases of children without a jury, unconstitutional and therefore void in violation of Defendant-Appellant's Constitutional rights pursuant to the Sixth Amendment of the United States Constitution and the Ohio Constitution, Article I, Sections 5 and 10, the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) denial of the fundamental right to an impartial jury; (2) fundamental unfairness; and (3) denial of the Equal Protection of the law.
 III. Trial Court erred in denying Defendant-Appellant's Motion requesting that the Court declare Ohio R.C. 2903.13 unconstitutional and, therefore, void pursuant to the Due Process and Equal Protection provisions of the United States and the Ohio Constitutions with regard to the following grounds: (1) fundamental unfairness; and (2) denial of the Equal Protection of the law.
 IV. Trial Court's decision adjudicating Defendant-Appellant a delinquent child in the circumstances of this case pursuant to Ohio R.C. 2903.13
is against the manifest weight of evidence in accordance with the Due Process and Equal Protection provisions of the United States and Ohio Constitutions.
 V. Trial Court's decision adjudicating Defendant-Appellant a delinquent child in the circumstances of this case pursuant to Ohio R.C. 2903.13
is not supported by sufficient probative evidence in accordance with the Due Process and Equal Protection
provisions of the United States and the Ohio Constitutions.
Appellant's first and second assignments of error are interrelated and will be addressed together. These assignments of error challenge the trial court's ruling denying appellant's motion for a jury trial. Appellant asserts that due process and equal protection standards required by the United States and Ohio Constitutions "explicitly and implicitly" mandate that juveniles are entitled to the right to an impartial jury. Appellant further argues that Juv.R. 27(A) and R.C. 2151.35(A) are unconstitutional in that they require the juvenile court to hear and determine all cases involving children without a jury.
Although appellant contends that the Sixth Amendment of the United States Constitution "explicitly and implicitly" mandates that juveniles are entitled to a jury trial, the United States Supreme Court has held that the jury trial right is inapplicable to juvenile proceedings. McKeiver v. Pennsylvania
(1971), 91 S.Ct. 1976, 1986 ("trial by jury in the juvenile court's adjudicative stage is not a constitutional requirement").
Further, appellant has failed to cite any Ohio precedent for the proposition that juveniles are entitled to a jury trial. In State v. Fisher (1969), 17 Ohio App.2d 183, 189-190, the court noted that "Ohio statutes make no provision for jury trial in any delinquency hearing in Juvenile Court." The Ohio Supreme Court has described the nature of a juvenile proceeding as "`neither a criminal prosecution, nor a proceeding according to the course of the common law, in which the right to a trial by jury is guaranteed.'" In re Agler (1969), 19 Ohio St.2d 70, 72, quotingPrescott v. State (1869), 19 Ohio St. 184. Thus, "[a] child is not a criminal by reason of any Juvenile Court adjudication, and civil disabilities ordinarily following conviction do not attach."In re Agler, supra, at 73.
In In re Agler, the Ohio Supreme Court held that "trial by jury * * * [is] not requisite in delinquency proceedings." Id., at 78. Other Ohio courts have also concluded that due process does not require that a jury trial be extended to juvenile court proceedings. See, e.g., In re O'Brien (April. 21, 1986), Butler App. No. CA85-04-028, unreported ("juvenile due process does not yet require that a juvenile receive a jury trial before he is adjudged delinquent for committing an act which would be a crime if committed by an adult"). Accordingly, appellant's contention that the trial court's denial of appellant's motion for a jury trial was in violation of appellant's right to due process is without merit.
We also find no merit to appellant's contention that the failure to provide a juvenile the right to a jury trial is violative of equal protection. In In re Vaughn (Aug. 13, 1990), Butler App. No. CA89-11-162, unreported, the court stated:
 The guarantee of equal protection of the laws means that "no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances." State v. Gledhill (1984), 13 Ohio App.3d 372, 373 * * *. "The Equal Protection Clause does not * * * require that the state never distinguish between citizens, but only that the distinctions that are made not be arbitrary or invidious." Avery v. Midland County, Texas (1968), 390 U.S. 474, 484 * * *.
 We find that juveniles adjudicated delinquent and adults convicted of a crime are not groups that are similarly situated. Courts have recognized in a variety of contexts that the state is justified in treating juveniles differently than adults because of its interest in preserving and promoting the welfare of the child. * * * This proposition is particularly applicable in the context of delinquency proceedings. Juveniles are entitled to proceedings that "measure up to the essentials of due process and fair treatment." In re Gault (1967), 387 U.S. 1, 30 * * *. However, "the Constitution does not mandate elimination of all differences in the treatment of juveniles." The state's interest in the welfare of children makes "a juvenile proceeding fundamentally different from an adult criminal trial." * * * For example, the United States Supreme Court has not extended the right to jury trials to juveniles in delinquency proceedings because to do so would destroy the informality and flexibility inherent in juvenile court proceedings. McKeiver, supra, at 545 * * *. As a consequence, juveniles have never been treated as a suspect class and legislation aimed at juveniles has never been subjected to the test of strict scrutiny. * * *
 Therefore, the standard of review to be applied is the rational basis test. The statute must be upheld if it is rationally related to a legitimate governmental objective. * * * (Citations omitted.)
In the present case, the trial court noted in its decision that juveniles who are involved in delinquency proceedings are not considered to be a suspect class. We agree with the trial court's determination that juveniles are not a suspect class for purposes of equal protection analysis. SeeVaughn, supra; See, also, State v. Howard (Sept. 9, 1992), Montgomery App. No. 13032, unreported ("Juveniles charged with delinquency and adults charged with crimes are not groups that are similarly situated," and "[t]he distinction between minors and adults `is too ingrained in the fabric of the law for such classifications * * * to be held to the test of strict scrutiny'"). Thus, the test to be applied in determining whether equal protection standards have been violated is whether the classification bears a rational relationship to a legitimate governmental objective.
Appellant's equal protection argument is premised upon the erroneous assumption that delinquency proceedings are the same as adult criminal proceedings. The juvenile statutes, however, are not criminal in nature, and "[t]he purpose behind the juvenile system is not to convict and punish the recalcitrant child, but to protect him or her from acquiring the `taint of criminality' by implementing a program of `supervision, care, and rehabilitation.'" In re Toler (May 4, 1983), Preble App. No. 314, unreported, citing R.C. 2151.01(B). In considering the fundamental differences between adult and juvenile proceedings, the United States Supreme Court in McKeiver, supra, at 1988, observed that, "[i]f the jury trial were to be injected into the juvenile court system as a matter of right, it would bring with it into that system the traditional delay, the formality, and the clamor of the adversary system." We conclude that the fact the legislature has by statute denied juveniles the right to a jury trial is rationally related to the purpose of preserving this "separate avenue for dealing with minors." Bellotti v. Baird
(1979), 99 S.Ct. 3035, 3044. In fact, the Supreme Court inBellotti recognized that the "acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults." Id. Accordingly, appellant's equal protection argument is without merit.
In light of our determination that the failure of Ohio's juvenile system to provide the right to a jury trial is not in contravention of either due process or equal protection concerns, we also find no merit to appellant's contention that the trial court erred in failing to declare Juv.R. 27(A) and R.C. 2151.35(A) unconstitutional. Based upon the foregoing, appellant's first and second assignments of error are overruled.
Under the third assignment of error, appellant asserts that R.C. 2903.13, Ohio's assault statute, is unconstitutional based upon due process and equal protection concerns. Specifically, appellant argues that the statute is unconstitutional because it provides for an enhanced penalty under certain circumstances in which the victim is a police officer or probation officer. We are not persuaded by appellant's contention.
A similar argument was rejected by the court in State v.Dombrowsky (Nov. 12, 1999), Wood App. Nos. WD-98-063 WD-99-035, in which the court held in pertinent part:
 R.C. 2903.13(A)(1) provides that one who knowingly causes or attempts to cause physical harm to another is guilty of assault. The offense is ordinarily classified as a first degree misdemeanor. R.C. 2903.13(C). However, under specific circumstances, the offense may be a fifth degree felony, R.C. 2903.13(C)(2), a third degree felony, R.C. 2903.13(C)(1), or, if the victim is a peace officer, firefighter, or emergency medical technician in the performance of his or her duty, it is a fourth degree felony. R.C. 2903.13(C)(3). Appellants contend that the statute denies those accused of assaulting a police officer due process because classifying such conduct as a felony is not rationally related to a legislative purpose.
 Laws enacted by the legislature pursuant to its police powers will be upheld if they bear a substantial relationship to the health, safety, morals or general welfare of the public and are not arbitrary, discriminatory, capricious or unreasonable. State v. Thompkins (1996), 75 Ohio St.3d 558, 560 * * *; see, also, Martinez v. California (1980), 444 U.S. 277, 283 * * *. In our view, a law which acts to protect those who are entrusted with ensuring the public safety falls within the broad ambit of keeping the public safe and providing for its general welfare. The legislature has deemed an assault on a police officer in the performance of his or her duty as more serious than an assault on someone who is not charged with protecting the public. We cannot say that this distinction is arbitrary, unreasonably discriminatory, capricious, or unreasonable. * * *
We agree with the reasoning of the court in Dombrowsky,supra, that a legislative enactment which enhances the penalty for causing harm to a peace officer in the performance of his or her duty bears a rational relationship to a legitimate state interest, i.e., protecting peace officers whose duty it is to protect the public. The legislative intent of attempting to provide greater protection to peace officers in the performance of their duty is neither arbitrary, capricious nor unreasonable, and we reject appellant's contention that the statute at issue is violative of due process or equal protection.
Appellant's third assignment of error is without merit and is overruled.
Appellant's fourth and fifth assignments of error are interrelated and will be discussed together. Under these assignments of error, appellant contends that her adjudication as a delinquent child, based upon a finding that she committed the underlying offense of assault, is not supported by sufficient evidence and is against the manifest weight of the evidence.
In reviewing the sufficiency of the evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The test for reviewing the weight of the evidence is slightly different, and the evidence is not construed most strongly in favor of the state. State v. Conley
(Dec. 16, 1993), Franklin App. No. 93AP-387, unreported. Rather, "the appellate court must engage in a limited weighing of the evidence to determine whether there is sufficient competent, credible evidence to permit reasonable minds to find guilt beyond a reasonable doubt." Id.
As previously noted, appellant was adjudicated a delinquent based on a finding that she committed the underlying offense of assault. R.C. 2903.13(A) provides that "[n]o person shall knowingly cause or attempt to cause physical harm to another." R.C. 2901.22(B) provides that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." "Physical harm" is defined as "any injury, illness or other physiological impairment, regardless of its gravity or duration." R.C.2901.01(A)(3).
At the hearing before the magistrate, David Cookston, a Franklin County probation officer, gave the following testimony regarding the events leading to appellant's adjudication as a delinquent. On August 27, 1998, Cookston met with a caseworker, Nancy Gress, regarding the transportation of appellant from the Franklin County Juvenile Detention Center to the Bassett House, located in Athens, Ohio. On that date, as Cookston was preparing to escort appellant to a vehicle in the garage of the detention center, the appellant asked Cookston if he was going to "take her home to get her clothes." (Tr. 13.) Cookston responded no, and told appellant he was taking her to the Bassett House.
Appellant then stated, "I'm not going any fuckin' where without my clothes." (Tr. 13.) Appellant continued to yell that she was not going anywhere without her clothes, prompting Cookston to attempt to handcuff the appellant. Although appellant resisted, Cookston was able to eventually put handcuffs on the appellant. The appellant stated to the officer that if she did not have the cuffs on, "I'd show ya." (Tr. 26.)
Cookston then took appellant to Cookston's vehicle, a mini-van. After getting appellant in the right front seat, Cookston reached across to get the seatbelt and appellant "tried to bite my arm at that time." (Tr. 14.) Appellant continued to yell and scream at the officer. Cookston was unable to get the seatbelt on appellant so he told her they were going to go back upstairs to the facility. At that point, appellant started kicking Cookston in both of his legs. Cookston has an artificial knee replacement on his left leg, and he started experiencing "pain in that leg late that day, and it lasted fairly severely for a couple of days, making it difficult to walk." (Tr. 18.)
Cookston was eventually able to get appellant out of the vehicle and into an elevator. While in the elevator, appellant spit in Cookston's face. During the time it took to get appellant upstairs on the elevator, appellant "continued to try to kick me, did kick me several times before I got her pinned up against the wall and put my legs so she couldn't get to me." (Tr. 20.) Cookston testified that all of the events at issue took place in the Franklin County Detention Center.
Nancy Gress, a caseworker for Franklin County Children Services, was with Cookston on the date appellant was to be transported to Athens. Gress was in the "sally port" of the detention center garage, standing near Cookston's van, when she observed Cookston tell the appellant that she was required to wear a seatbelt. The appellant refused to comply. When Cookston attempted to put the seatbelt on appellant, "she began kicking him, struck him numerous times in the legs. (Tr. 44.) Gress also observed the appellant spit on Cookston as Cookston and the appellant were going inside an elevator.
The evidence construed most strongly in favor of the state indicates that, at the time the probation officer attempted to place appellant in the vehicle, appellant became verbally abusive and began resisting the officer. While seated in the vehicle, appellant attempted to bite the officer on the arm. When the officer informed appellant that she was required to wear a seatbelt, appellant began kicking the officer repeatedly in both legs. During the incident, appellant stated to the officer that, if it were not for the cuffs, "I'd show ya." The probation officer testified that he has an artificial knee replacement, and that later in the day he began experiencing pain in his leg. He further stated that the pain was fairly severe for a couple of days, making it difficult for him to walk. A caseworker witnessed the incident and provided corroborating testimony regarding the events. Based upon the evidence presented, a rational trier of fact could have found the essential elements of assault proven beyond a reasonable doubt and thus the trial court did not err in finding that there was sufficient evidence to support the magistrate's decision.
Further, we agree with the trial court that the findings of the magistrate were not against the manifest weight of the evidence. The only two witnesses testifying to the events were the probation officer and the caseworker and, as noted above, the testimony of the caseworker corroborated the probation officer's version of the incident. The testimony of these witnesses, if believed, provided sufficient competent, credible evidence to support the magistrate's finding. Accordingly, appellant's fourth and fifth assignments of error are overruled.
Based upon the foregoing, appellant's first, second, third, fourth and fifth assignments of error are overruled and the judgment of the trial court is hereby affirmed.
Judgment affirmed.
BRYANT, J., and BOWMAN, P.J., concur.