{¶ 20} The tragedy in this matter clearly demonstrates the inadequacy of Ohio's current sentencing guidelines. The trial court imposed a maximum sentence "for the reason that the Court finds that the offender committed one of the worst forms of the Voluntary Manslaughter offense, or complicity to commit that offense in that that — this was a death case." The court went on to find that "Mr. Mendenhall poses the greatest likelihood of committing future crimes, and that's based on his serious Juvenile Court record and the record that he's accomplished already at the age of 21 as an adult." Thus, the trial court made two critical findings to support the imposition of a maximum sentence. While I do not disagree with the sentence imposed, I find fault with the procedure employed to arrive at that result.
 {¶ 21} The trial court may very well be right in all its findings. However, it is those very findings that the Supreme Court of the United States has specifically prohibited.
 {¶ 22} In enacting Senate Bill 2, with an effective date of July 1, 1996, the Ohio General Assembly radically altered its approach to criminal sentencing. The new law essentially designated three classes of citizens who would have statutorily defined roles in determining the amount of time an individual would be incarcerated for a particular crime. The three classes defined were: (1) the Ohio General Assembly; (2) judges; and (3) jurors.
 {¶ 23} Senate Bill 2 also provided three distinct areas of judicial limitations when it set about its task of providing "truth in sentencing." Those would be: (1) sentences imposed beyond the minimum; (2) sentences imposing the maximum; and (3) consecutive sentences. The objective was apparently to provide a degree of consistency and predictability in sentencing.
 {¶ 24} It is clear that the legislature did not interfere with the role of juries to determine guilt. Thus, the first task in sentencing went to juries. In the second phase, the legislature reserved unto itself the role of establishing minimum sentences that would be imposed once the finding of guilt, either by trial or admission, was accomplished. And finally, the new law set forth the "findings" that were required before a judge would be permitted to depart from the minimum or impose consecutive sentences. Thus, everyone had a clearly defined role to play.
 {¶ 25} The first major pronouncement by the Ohio Supreme Court concerned the "findings" necessary to support the imposition of a maximum sentence. In Edmondson, the Supreme Court of Ohio held that a trial court must "make a finding that gives its reasons" on the record for the imposition of a maximum sentence.[2]
 {¶ 26} Following that pronouncement, the Supreme Court of Ohio, inState v. Comer, required the sentencing courts to make their "findings" and give reasons supporting those findings on the record "at the sentencing hearing."[3] Thus, it is clear that the courts, in applying Senate Bill 2, imposed duties upon judges to make specific findings to support their sentences whenever they went beyond the minimum; or imposed maximum sentences or consecutive sentences.
 {¶ 27} In 2004, however, the United States Supreme Court issued its judgment in Blakely v. Washington and made it clear that judges making "findings" outside a jury's determinations in sentencing violated constitutional guarantees.[4] Specifically, the court held:
 {¶ 28} "Our precedents make clear, however, that the `statutory maximum' for Apprendi purposes is the maximum sentence a judge may imposesolely on the basis of the facts reflected in the jury verdict oradmitted by the defendant. * * * In other words, the relevant `statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts `which the law makes essential to the punishment,' * * * and the judge exceeds his proper authority."[5]
 {¶ 29} Thus, it is clear that the statutory judicial "findings," which provide the framework for all sentencing in Ohio, are prohibited by the United States Supreme Court.
 {¶ 30} Following the United States Supreme Court's release ofBlakely, this court determined that a trial court's reliance on a previous conviction as evidenced in the record would still be permissible for the purpose of imposing a sentence greater than the minimum.[6] As stated by this court in State v. Taylor:
 {¶ 31} "Under R.C. 2929.14(B)(1), the court is entitled to depart from the shortest authorized prison term if the `offender had previously served a prison term.' Under Apprendi, the fact of a prior conviction may be used to enhance the penalty for a crime without being submitted to a jury and proven beyond a reasonable doubt.[7] According to Taylor's pre-sentence investigation report, Taylor had served at least one prior prison term. * * * Therefore, the trial court's imposition of prison terms of three years, * * * seventeen months * * * and eleven months * * * are all constitutionally permissible under Apprendi and, by extension,Blakely."[8]
 {¶ 32} It is clear that, for Blakely purposes, a trial court is permitted to take judicial notice that a defendant has served a prior prison term, for that is not a "finding." It is a judicial acknowledgement of an indisputable fact. The trial court merely acknowledges the prior prison term and does not have to weigh conflicting evidence to make a factual finding. As such, a defendant's Sixth Amendment rights are not compromised by the exercise.
 {¶ 33} I believe that a distinction must be made between "findings," which courts make to justify maximum or consecutive sentences and "acknowledging" the existence of a prior sentence in a criminal matter, which would permit the court to exercise its discretion in departing from a minimum sentence. Clearly, Blakely no longer permits courts in Ohio to "find" that a defendant has committed the "worst form of the offense" or that his actions predict the "greatest likelihood of recidivism" without either an admission by the defendant or a finding by the trier of fact.
 {¶ 34} As so eloquently stated by the United States Supreme Court inBlakely:
 {¶ 35} "This case is not about whether determinate sentencing is constitutional, only about how it can be implemented in a way that respects the Sixth Amendment."[9]
 {¶ 36} The court went on to state that the Sixth Amendment was not a "limitation of judicial power, but a reservation of jury power."[10] In what I believe to be the true thrust of this landmark case, the United States Supreme Court finally held that "[t]he framers would not have thought it too much to demand that, before depriving a man of three more years of his liberty, the State should suffer the modest inconvenience of submitting its accusation to the `unanimous suffrage of twelve of his equals and neighbours,' * * * rather than a lone employee of the state."[11]
 {¶ 37} Recently, in State v. Montgomery, the First District Court of Appeals held that "[a] plain reading of this statute indicates that R.C.2929.14(B) entitles an offender who has not previously served a prison term to a presumption that the imposition of the minimum term is sufficient.[12] Thus, before imposing a term greater than the minimum, the sentencing court must make an additional finding under R.C. 2929.14(B)(2)."[13] The court then went on to "hold that the statutory maximum for an offender who has not previously served a prison term is the minimum prison term allowed by law for the offense."[14]
 {¶ 38} In addition to my firm belief that trial courts are no longer permitted to make findings such as those made herein, I do not agree with the majority's conclusions regarding juvenile adjudications. Rather, I agree with the First District's analysis of this issue as set forth inState v. Montgomery:
 {¶ 39} "[T]he court based its R.C. 2929.14(B)(2) finding on [the defendant's] previous juvenile-delinquency adjudications and confinement in juvenile detention facilities. It is well established in Ohio that an adjudication that a juvenile is delinquent is not the same as a criminal conviction.[15] Accordingly, the fact of [the defendant's] previous juvenile-delinquency adjudications could not be used to justify a finding that the shortest prison term would not adequately protect the public from future crime by the offender or would demean the seriousness of the crime under Blakely's prior-conviction exception."[16]
 {¶ 40} In conclusion, I believe the trial court erred in sentencing the defendant to more than the minimum sentence in this matter; and, as a matter of law, I would hold that trial courts are only permitted to depart from the minimum sentence based upon facts admitted by the defendant or found by the trier of fact. The only exception I believe permissible, consistent with Blakely, is the indisputable fact of a prior adult prison term, which would then permit judges to do their statutory job. And that job is, and always has been, to sentence criminals within the determinate bracket established by the Ohio General Assembly.
[2] State v. Edmonson (1999), 86 Ohio St.3d 324, 328-329.
[3] State v. Comer, 99 Ohio St.3d 463, 2003-Ohio-4165, paragraph one of the syllabus.
[4] Blakely v. Washington (2004), 124 S.Ct. 2531.
[5] (Emphasis in original and internal citations omitted.) Id. at 2537.
[6] State v. Taylor, 158 Ohio App.3d 597, 2004-Ohio-5939.
[7] Apprendi v. New Jersey (2000), 530 U.S. 466, 490, citing Jones v.United States (1999), 526 U.S. 227, 243, fn. 6.
[8] State v. Taylor, at ¶ 25.
[9] Blakely v. Washington, 124 S.Ct. at 2540.
[10] Id.
[11] Id. at 2543.
[12] State v. Edmonson, 86 Ohio St.3d at 326.
[13] State v. Montgomery, 159 Ohio App.3d 752, 2005-Ohio-1018, at ¶8.
[14] Id. at ¶ 9.
[15] In re Agler (1969), 19 Ohio St.2d 70, 80 ("`The very purpose of the Juvenile Code is to avoid treatment of youngsters as criminals and insulate them from the reputation and answerability of criminals'"); Inre Good (1997), 118 Ohio App.3d 371, 375; In re Rayner (Nov. 8, 2001), 7th Dist. No. 00-BA-7, 2001 WL 1468530 ("`A juvenile court delinquency adjudication is not a criminal conviction * * * unless specifically established by the legislature'").
[16] State v. Montgomery, at ¶ 13.