IN RE H.V.

[Cite as *In re H.V., 138 Ohio St.3d 408, 2014-Ohio-812.*]

*R.C. 5139.52(F)—Juvenile court has authority under R.C. 5139.52(F) to commit a juvenile to the custody of the Ohio Department of Youth Services for a period exceeding 30 days—Juvenile court may order a commitment term for a supervised-release violation to be served consecutively to a commitment term for a new crime.*

(No. 2012-1688—Submitted August 20, 2013—Decided March 13, 2014.)

APPEAL from the Court of Appeals for Lorain County,

Nos. 11CA010139 and 11CA010140, 2012-Ohio-3742.

_____

**O'NEILL, J.**

{¶ 1} In this case, we are asked to decide whether a juvenile court has the authority to commit a delinquent juvenile to the Ohio Department of Youth Services ("ODYS") for a minimum period in excess of 30 days for violating his supervised release. We must then decide whether a juvenile court, when committing a juvenile to the ODYS for a supervised-release violation, can order that the commitment period be served consecutively to the commitment period imposed for the crime that resulted in the violation of supervised release. We answer both questions in the affirmative.

**Facts and Procedural History**

{¶ 2} On December 8, 2010, a Lorain County Court of Common Pleas Juvenile Court judge found H.V. to be delinquent for having committed an act that if committed by an adult would have constituted attempted domestic violence, a felony of the fourth degree. At the time of the offense, H.V. was on supervised release for committing two earlier domestic-violence offenses. Thus,

H.V. had also been charged with violating the terms of his supervised release, but that charge was merged with the attempted-domestic-violence charge. The court committed H.V. to the ODYS for a minimum term of six months.

{¶ 3} On March 17, 2011, roughly three months after his "minimum six-month commitment" to the ODYS, H.V. was placed on supervised release from the ODYS. H.V. had been involved in two fights with other juveniles before being released.

{¶ 4} Approximately six months after H.V.'s release, H.V., then age 16, was charged with second-degree felonious assault in violation of R.C. 2903.11(A)(1). He was also charged with violating the terms of his supervised release in the 2010 domestic-violence case.

{¶ 5} On November 23, 2011, the juvenile court judge conducted a dispositional hearing, revoked H.V.'s supervised release, and committed H.V. to the ODYS for a minimum period of 90 days for violating the conditions of his supervised release. Five days later, the judge found H.V. to be delinquent and committed him to the ODYS for a minimum term of one year for the felonious assault. The court order specified that the 90-day term imposed for the violation of supervised release would run consecutively to the one-year term imposed for the felonious assault.

{¶ 6} On December 27, 2011, H.V. appealed to the Ninth District Court of Appeals, asserting four assignments of error, two of which are relevant here. First, H.V. alleged that pursuant to R.C. 5139.52(F), the juvenile court erred in committing him to the ODYS for a minimum period in excess of 30 days for violating the terms of his supervised release. Second, he claimed that pursuant to R.C. 2152.17(F), the juvenile court erred when it ordered H.V. to serve his sentences consecutively. The Ninth District rejected both of H.V.'s claims and affirmed the order of the trial court.

{¶ 7} H.V. now seeks this court's review of the court of appeals' judgment. For the reasons that follow, we affirm the judgment of the Ninth District.

**Analysis**

{¶ 8} A juvenile court's disposition order will be upheld unless the court abused its discretion. *In re D.S.,* 111 Ohio St.3d 361, 2006-Ohio-5851, 856 N.E.2d 921. The term "abuse of discretion" implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 9} In reviewing a case that originated in the juvenile court, we keep in mind the overriding purposes for dispositions of juvenile offenders as set forth by the General Assembly in R.C. 2152.01: to provide for the care, protection, and mental and physical development of the juvenile offender; to protect the public interest and safety; to hold the juvenile offender accountable; to restore the victim; and to rehabilitate the juvenile offender. The statute further states that these purposes are to be achieved "by a system of graduated sanctions and services." R.C. 2152.01(A).

{¶ 10} First, we are asked to determine whether a juvenile court has the authority under R.C. 5139.52(F) to commit a delinquent juvenile to the ODYS for a minimum period in excess of 30 days for a violation of supervised release. H.V. asserts that the juvenile court erred in committing him to the ODYS for a minimum period longer than 30 days. H.V. argues that the Revised Code does not authorize a juvenile court to commit a delinquent juvenile to the ODYS for a specific minimum period for a violation of supervised release. He argues that R.C. 5139.52(F) authorizes the juvenile court to return a delinquent juvenile to the ODYS but does not authorize the court to determine the length of the commitment. H.V. suggests that following a revocation of supervised release,

only the ODYS has the authority to impose a new period of incarceration beyond 30 days.  We disagree.

**{¶ 11}** R.C. 5139.52(F) clearly authorizes juvenile courts to return juveniles who have committed serious violations of the terms of their supervised release to the ODYS for a *minimum* period of 30 days.  The statute provides:

> (F) If a child who is on supervised release is arrested under an order of apprehension, under a warrant, or without a warrant as described in division (B)(1), (B)(2), or (C) of this section and taken into secure custody, and if a motion to revoke the child's supervised release is filed, the juvenile court of the county in which the child is placed promptly shall schedule a time for a hearing on whether the child violated any of the terms and conditions of the supervised release.  If a child is released on supervised release and the juvenile court of the county in which the child is placed otherwise has reason to believe that the child has not complied with the terms and conditions of the supervised release, the court of the county in which the child is placed, in its discretion, may schedule a time for a hearing on whether the child violated any of the terms and conditions of the supervised release. If the court of the county in which the child is placed on supervised release conducts a hearing and determines at the hearing that the child did not violate any term or condition of the child's supervised release, the child shall be released from custody, if the child is in custody at that time, and shall continue on supervised release under the terms and conditions that were in effect at the time of the child's arrest, subject to subsequent revocation or modification.  If the court of the county in which the child is placed on supervised

release conducts a hearing and determines at the hearing that the child violated one or more of the terms and conditions of the child's supervised release, the court, if it determines that the violation was a serious violation, may revoke the child's supervised release and order the child to be returned to the department of youth services for institutionalization or, in any case, may make any other disposition of the child authorized by law that the court considers proper. If the court orders the child to be returned to a department of youth services institution, the child shall remain institutionalized for a minimum period of thirty days, the department shall not reduce the minimum thirty-day period of institutionalization for any time that the child was held in secure custody subsequent to the child's arrest and pending the revocation hearing and the child's return to the department, the release authority, in its discretion, may require the child to remain in institutionalization for longer than the minimum thirty-day period, and the child is not eligible for judicial release or early release during the minimum thirty-day period of institutionalization or any period of institutionalization in excess of the minimum thirty-day period.

{¶ 12} This provision clearly means that the ODYS is *prohibited* from releasing a returning violator for 30 days. The statute speaks only to the minimum period of institutionalization. It clearly vests the ODYS with the authority to *increase* the judge's original sentence—presumably for juveniles who simply cannot be rehabilitated within that time—but there is no indication in this section that the juvenile court is limited in the amount of time that it may impose under this provision. Nothing in the statute, or common sense, supports the

proposition that the judge is limited to ordering a *maximum* 30-day commitment to the ODYS. Our reading of the statute is further supported by the final clause that specifically prohibits the granting of judicial release or early release "during the minimum thirty-day period of institutionalization *or any period of institutionalization in excess of the minimum thirty-day period.*" (Emphasis added.) R.C. 5139.52(F). It makes no sense to include this clause in the statute if the legislature intended to vest the release authority with the exclusive authority to determine whether the juvenile should be held for a period beyond the minimum 30 days. The statute is clear on its face, and the trial court and the court of appeals properly applied the law.

{¶ 13} Here we have a case in which a juvenile on supervised release following two prior offenses was committed in 2010 to the ODYS for attempted domestic violence, a felony of the fourth degree. The juvenile court merged the charge for that violation of supervised release with the charge for the attempted domestic violence. The juvenile was later placed on supervised release, and within six months, he committed yet another crime, this time a felonious assault, a felony of the second degree. The juvenile court properly revoked the juvenile's supervised release and committed him to the ODYS for a minimum of 90 days for the supervised-release violation and for one year for the felonious assault. We will not construe the statute to prevent the court from holding H.V. fully accountable for his behavior or to force the court to ignore the fact that H.V. was not only guilty of violating the conditions of his supervised release but had also committed another violent act. There is no rational reason to suggest that a juvenile court should be limited in the sanctions that it can apply in such a situation. The court's job, after all, is not only to attempt to correct the juvenile but to protect the public as well. R.C. 2152.01(A).

{¶ 14} Felonious assault, without question, is a serious offense and a serious violation of supervised release. H.V. appeared before the same juvenile

6

court judge for each of the criminal offenses leading up to the felonious assault. We are wholly unpersuaded that this juvenile's latest violation of supervised release deserved the same sanction that was imposed as a result of his previous supervised-release violation or that the judge abused her discretion when she ordered a term of commitment beyond the statutory minimum of 30 days.

{¶ 15} We can find no provision in the Revised Code that gives the release authority of the ODYS the power to override a statutory minimum period of commitment or a minimum period of commitment ordered by a juvenile court. R.C. 5139.50 specifies the powers and duties of the ODYS release authority, and R.C. 5139.51 specifies the procedures that the ODYS release authority must follow when releasing a juvenile from the secure facility in which he or she was placed following a juvenile court's order of commitment. Both of these statutes include clear prohibitions against releasing a juvenile who was committed to the ODYS by a juvenile court order. R.C. 5139.50(E)(1)[1] and 5139.51.[2]

{¶ 16} Thus, we hold that a juvenile court is within its statutory authority under R.C. 5139.52(F) to commit a juvenile for a period exceeding the 30-day minimum set forth in the statute. In so doing, we affirm the judgment of the Ninth District Court of Appeals. If the ODYS release authority releases a juvenile prior to the statutorily prescribed minimum period of 30 days, that release is contrary to

1. The ODYS release authority is a five-member bureau within the ODYS whose members are appointed by the director of the ODYS. R.C. 5139.50(A). R.C. 5139.50 specifies the powers and duties of the release authority. The statute specifically prohibits the release authority from releasing juvenile offenders who have been committed to the legal custody of the ODYS and "who have not completed a prescribed minimum period of time or prescribed period of time in a secure facility." R.C. 5139.50(E)(1).

2. R.C. 5139.51, the statute describing the procedures the ODYS release authority must follow when releasing a juvenile offender, specifically states that the release authority "shall not discharge the child or order the child's release on supervised visitation release prior to the expiration of the prescribed minimum period of institutionalization or institutionalization in a secure facility or prior to the child's attainment of twenty-one years of age, whichever is applicable under the order of commitment, other than as is provided in section 2152.22 of the Revised Code [the statute setting forth the procedures for judicial release]."

law. Likewise, if the ODYS release authority releases a juvenile prior to the expiration of the minimum time specified by a juvenile court's order, that release violates a court order and is contrary to law.

{¶ 17} Next, we are asked to determine whether a juvenile court may order a commitment term for a supervised-release violation to be served consecutively to a commitment term for a new crime. H.V. asserts that the juvenile court erred when it ordered that his commitment for his supervised-release violation pursuant to R.C. 5139.52(F) be served consecutively to his commitment for his new felonious-assault offense pursuant to R.C. 2152.16. H.V. argues that because R.C. 2152.17(F) authorizes a court to impose consecutive commitment periods when a juvenile commits multiple felony offenses and because that section does not specifically state that a court may order a commitment term for a new felony offense to be served consecutively to a term for a supervised-release violation, the juvenile court lacks the authority to require that these terms be served consecutively.

{¶ 18} We agree with H.V. that R.C. 2152.17 does not apply in this case; however, we disagree with his assertion that because R.C. 2152.17 does not apply, the juvenile court lacks the statutory authority to order that the term it imposes for a supervised-release violation be served consecutively to the term it imposes for felonious assault. Authority to impose consecutive terms can be found in R.C. 2152.19(A)(8), which provides that "[i]f a child is adjudicated a delinquent child, the court may * * * [m]ake any further disposition that the court finds proper, * * *."

{¶ 19} H.V. argues that because the Revised Code enumerates circumstances under which a juvenile court may impose consecutive terms of commitment, juvenile courts are prohibited from imposing consecutive sentences under any other circumstances. This court rejected that argument in *In re*

*Caldwell,* 76 Ohio St.3d 156, 158-159, 666 N.E.2d 1367 (1996), and we reject it in this case as well.

{¶ 20} Here, the juvenile court was presented with a repeat offender whose criminal conduct showed no signs of ebbing. In fact, it was escalating—from an earlier domestic-violence charge to the current felonious-assault charge. Under these circumstances, it would have been contrary to R.C. 2152.01(A), which requires juvenile courts to hold offenders accountable for their actions by imposing graduated sanctions, for the juvenile court to continue to order the same sanction despite the escalating and dangerous criminal behavior. R.C. 2152.19(A)(8) expressly grants juvenile courts the authority to make any disposition that the court finds proper. By ordering that the commitment period imposed for H.V.'s latest supervised-release violation be served consecutively to the commitment period imposed for the felonious assault, the juvenile court, pursuant to the authority in R.C. 2152.19(A)(8), imposed a more severe sanction than it had imposed for his previous violation, in accordance with R.C. 2152.01(A).

{¶ 21} Thus, we hold that the juvenile court was within its statutory authority under R.C. 2152.19(A)(8), 5139.52(F), and 2152.01(A) to order H.V. to serve the imposed term of commitment for his supervised-release violation consecutively to the imposed term of commitment for his new crime. In so doing, we affirm the judgment of the Ninth District Court of Appeals.

**Conclusion**

{¶ 22} We hold that the juvenile court did not abuse its discretion when it ordered H.V. to serve a minimum 90-day term for a serious violation of supervised release. This order was made in accordance with the plain language of R.C. 5139.52(F). We also hold that it was not an abuse of discretion for the juvenile court to order the term of commitment imposed for the supervised-release violation to be served consecutively to the term of commitment imposed

for the underlying offense and that this order was made in accordance with the plain language of R.C. 2152.19(A)(8) and 2152.01(A).

Judgment affirmed.

O'DONNELL, LANZINGER, and KENNEDY, JJ., concur.

FRENCH, J., concurs in part and dissents in part.

O'CONNOR, C.J., and PFEIFER, J., dissent.

_____

**FRENCH, J., concurring in part and dissenting in part.**

{¶ 23} I agree with the majority's conclusion that the juvenile court could order H.V.'s commitments to be served consecutively. Like the majority, I find *In re Caldwell*, 76 Ohio St.3d 156, 666 N.E.2d 1367 (1996), to be dispositive on this issue.

{¶ 24} *Caldwell* dealt with identical statutory language and identical arguments. There, we were asked to decide whether a juvenile court had authority to order consecutive terms of commitment under former R.C. 2151.355(A)(11), Am.Sub.H.B. No. 725, 144 Ohio Laws, Part IV, 6368, 6372, effective April 16, 1993. Former R.C. 2151.355(A)(11) gave juvenile courts the ability to "[m]ake any further disposition that the court finds proper." We held that this catchall language allows courts to impose consecutive commitment terms. *Id.* at 159.

{¶ 25} R.C. 2151.355(A)(11) was repealed in 2002, but the pertinent language from that section was reenacted in R.C. 2152.19(A), the statute at issue here. Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447, 9573, relevant sections effective January 1, 2002. The relevant language of both statutes is identical; like its predecessor, R.C. 2152.19(A)(8) gives a court the authority to "[m]ake any further disposition that the court finds proper." Per *Caldwell*, this language clearly "includes the authority to order consecutive terms of commitment." *Id.* at 159. Because *Caldwell* is dispositive and indistinguishable,

I agree with the majority opinion that the juvenile court had the authority to order consecutive commitments.

{¶ 26} I respectfully disagree, however, with the majority's determination that the juvenile court can commit a juvenile to a minimum term of commitment in excess of 30 days. If a juvenile violates parole, a court can, under R.C. 5139.52(F), revoke the parole and return the child to the Ohio Department of Youth Services ("ODYS"). R.C. 5139.52(F) does not grant the court any authority to determine the term of the juvenile's commitment, minimum or maximum. The minimum 30-day term is imposed by statute, and the maximum term (or rather, the child's release date) is left solely to the discretion of ODYS. The court simply has no authority to determine the length of the ODYS commitment at all. It may only revoke parole and return the child to ODYS. I join the chief justice's well-reasoned dissent on this issue.

_____

**O'CONNOR, C.J., dissenting.**

{¶ 27} The majority's decision to affirm the Ninth District Court of Appeals is not supported by the language of the relevant statutes or by the General Assembly's rationale in enacting those laws.

{¶ 28} The juvenile court did not have the power to designate a mandatory minimum confinement term of 90 days when ordering H.V.'s return to the Ohio Department of Youth Services ("ODYS") to continue serving under his 2010 disposition, and that portion of the juvenile court's November 23, 2011 revocation disposition should be reversed as unlawful. And because the juvenile court did not have the power to order H.V. to serve the confinement term imposed for his supervised-release violation consecutively to the confinement term imposed for the new delinquency adjudication, that portion of the November 23, 2011 disposition also should be reversed as unlawful. I therefore dissent.

ANALYSIS

{¶ 29} Upon revocation of a child's supervised release, a juvenile court has no authority to increase the 30-day mandatory minimum period of confinement set forth in R.C. 5139.52(F). Additionally, in enacting R.C. 2152.17, the General Assembly chose to permit consecutive terms of confinement only for certain enumerated specifications or dispositions involving multiple offenses that would be felonies if committed by an adult, leaving juvenile courts without authority to impose consecutive terms outside of these specified circumstances. The juvenile court therefore acted in excess of its statutory authority when it increased H.V.'s mandatory minimum term of confinement under R.C. 5139.52(F) and imposed consecutive terms of confinement in a way that was not permitted by R.C. 2152.17.

**A juvenile court has no authority to increase the statutory minimum term of institutionalization**

{¶ 30} The plain language of R.C. 5139.52(F) dictates that once a juvenile's supervised release is revoked and his original indefinite term of institutionalization is reinstated, a minimum 30-day term of institutionalization arises as a matter of law. By construing the 30-day term in R.C. 5139.52(F) as merely the baseline for the juvenile court's discretion to impose any minimum term of institutionalization, the majority fails to recognize the significance of minimum and indefinite sentencing provisions in the context of juvenile cases, as well as the significance of statutory limitations on the discretionary authority of both the juvenile court and the ODYS.

{¶ 31} The juvenile justice system exists as " 'an uneasy partnership of law and social work,' " *In re Agler*, 19 Ohio St.2d 70, 73, 249 N.E.2d 808 (1969), quoting Whitlatch, *The Juvenile Court*, 18 W.Res.L.Rev. 1239, 1246 (1967), which serves to both support and correct its wards in an "institutionalized and thus reliable manner," *id*. Juvenile proceedings are neither criminal nor penal in

nature, and the juvenile justice system must value, above all, the child's welfare and betterment. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 66-67.

{¶ 32} The purposes underlying all juvenile dispositions are set forth in R.C. 2152.01(A): "to provide for the care, protection, and mental and physical development of children subject to this chapter [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." And "[*t*]*hese purposes shall be achieved by a system of graduated sanctions and services*." (Emphasis added.) *Id.* The various traditional juvenile dispositions available to a trial court are delineated in R.C. 2152.16, 2152.17, 2152.19, and 2152.20. R.C. 2152.02(Z). A child is eligible for harsher sanctions only upon reaching a certain age and for certain serious misconduct. *See, e.g.*, R.C. 2152.11 (serious-youthful-offender dispositions); R.C. 2152.12 (transfer of cases from juvenile to adult criminal proceedings).

{¶ 33} In this case, H.V. was adjudicated through the traditional juvenile process for committing a fourth-degree felony at the age of 15. In fashioning an appropriate disposition for H.V., the juvenile court had a choice among various traditional juvenile dispositions: placement into the legal custody of ODYS for secure confinement, R.C. 2152.16; placement in a detention facility, R.C. 2152.19(A)(3); placement under house arrest, R.C. 2152.19(A)(4)(j); the imposition of fines, R.C. 2152.20(A)(1); and additional options or combinations of options.

{¶ 34} But after the juvenile court chose to place H.V. in the legal custody of ODYS for secure confinement, the court's discretion regarding that confinement was limited by R.C. 2152.16 and 2152.18. Because H.V. was adjudicated delinquent for a fourth-degree felony, the juvenile court had no discretion to impose anything other than an indefinite term of institutionalization

with a minimum period of six months and a maximum period up to H.V.'s 21st birthday. R.C. 2152.16(A)(1)(e). The juvenile court was also required to credit H.V. for the 83 days that H.V. spent in a detention home while awaiting the juvenile court's December 8, 2010 dispositional decision, causing H.V.'s minimum six-month term to expire on or about March 16, 2011. R.C. 2152.18(B).[3]

{¶ 35} Because the juvenile court committed H.V. to the permanent legal custody of ODYS, the court ceased to have jurisdiction over H.V. in relation to the 2010 adjudication, except under limited circumstances. R.C. 2152.22(A). The juvenile court's jurisdiction became limited to (1) granting judicial release during H.V.'s minimum six-month institutionalization period under certain conditions provided in R.C. 2152.22(B) and (C), (2) granting judicial release at any time after the minimum period under R.C. 2152.22(D), (3) determining whether H.V. violated the terms of his judicial release and, if so, revoking judicial release pursuant to the conditions of R.C. 2152.22(E), and (4) under R.C. 2152.22(H), performing certain judicial functions related to a decision by ODYS to release H.V. and revocation of that release under R.C. 5139.51 and 5139.52. Conversely, upon being granted permanent legal custody of H.V. up to his 21st birthday, ODYS's authority to determine the trajectory of H.V.'s rehabilitation was plenary, subject to the above limitations provided by statute. R.C. 2152.22(A). Within the parameters of H.V.'s indefinite term of institutionalization, ODYS had the authority to release H.V. at any point that it determined that its rehabilitative efforts had reached a satisfactory end. Ohio Adm.Code 5139-68-03.

{¶ 36} A review of the authority granted to and the constraints placed upon both the juvenile court and ODYS by the legislature requires a conclusion

---

3. The majority implies in ¶ 3 that ODYS permitted H.V.'s release after he had served only three months toward his six-month mandatory minimum term. This implication is patently incorrect.

that after the disposition in a traditional juvenile proceeding, the statutes are primarily focused on facilitating the release of the child from confinement. After a child serves a minimum period of confinement, the ODYS has the authority to release the child, even if the juvenile court does not believe that he or she should be released. And the juvenile court can order the child's release, even if ODYS does not believe that he or she should be released. R.C. 5139.51; 2152.22. Neither of these statutes allows either entity to compel a child's confinement past the minimum term if the other entity wants him or her to be released.

{¶ 37} This general standard of promoting release from institutionalization is subject to few exceptions, but the revocation-of-supervised-release rule of R.C. 5139.52(F) contains one of those exceptions. The statute provides that after a juvenile court determines that a child has committed a serious violation of the terms and conditions of the child's supervised release, the juvenile court may return the child to ODYS pursuant to the prior adjudication or it may craft any other disposition that is "authorized by law that the court considers proper." R.C. 5139.52(F).

{¶ 38} Although the juvenile court's discretionary authority under the language of R.C. 5139.52(F) seems practically limitless when read out of context, it must be remembered that the juvenile court's authority under R.C. 5139.52(F) arises only in circumstances in which the court's general authority has otherwise been extinguished. R.C. 2152.22(A). Because the juvenile court's authority over the child is restored only to the limited extent provided by R.C. 5139.52(F), the majority's generosity in construing the court's discretionary powers is not supported by the statutory scheme. Moreover, just as with H.V.'s original 2010 disposition, when the juvenile court revoked H.V.'s supervised release, the juvenile court had the discretion to choose among various lawful dispositional options, but its discretion became limited by the applicable terms of the option it selected. Thus, once the juvenile court opted to return H.V. to ODYS, the other

terms of H.V.'s disposition were controlled by the remainder of the language in R.C. 5139.52(F):

> [T]he child shall remain institutionalized for a minimum period of thirty days, [ODYS] shall not reduce the minimum thirty-day period of institutionalization for any time that the child was held in secure custody subsequent to the child's arrest and pending the revocation hearing and the child's return to [ODYS], the [ODYS] release authority, in its discretion, may require the child to remain in institutionalization for longer than the minimum thirty-day period, and the child is not eligible for judicial release or early release during the minimum thirty-day period of institutionalization or any period of institutionalization in excess of the minimum thirty-day period.

{¶ 39} When construing this and any other statute, our paramount concern is the legislative intent in enacting the statute, and our interpretation of the specific words used is guided by their plain, customary meaning. *Yonkings v. Wilkinson*, 86 Ohio St.3d 225, 227, 714 N.E.2d 394 (1999). A plain reading of the terms and modifiers in the above statutory language reveals that the trial court no longer has any control over the length of a child's confinement after choosing to return the child to the custody of ODYS. It is only ODYS that is authorized to resume its role of carrying out the indefinite term of institutionalization imposed in the original disposition.

{¶ 40} Although the statute states that "the court * * * may * * * order the child to be returned" to ODYS, it does not authorize the court to prescribe a minimum term of institutionalization. R.C. 5139.52(F). Instead, the 30-day-minimum term arises from the statute, and all further references to the juvenile

court serve only to vitiate the court's normal discretionary power to release the child from confinement. Thus the length of the child's confinement after revocation is not within the trial court's authority. This makes sense because the revocation is merely a reinstatement of the juvenile court's previous disposition for the child, and a court has neither the power to alter the terms of the original disposition nor the power to increase the child's minimum term of confinement.

{¶ 41} The General Assembly's reason for inserting a minimum-term-of-confinement rule in R.C. 5139.52(F) is clear. The child has necessarily already completed a minimum term of confinement, so both the court and ODYS would ordinarily have the authority to immediately release the child the moment after the child returns to secure confinement. The 30-day rule acts, in effect, as a temporary stay on the release powers that either entity might be able to exercise. The 30-day rule, as well as its provision that prevents ODYS from reducing that 30-day minimum period by crediting the child with the time he or she served, prevents an immediate release from occurring and ensures that a child will be held accountable for the violation of supervised release.

{¶ 42} The majority gives a juvenile court discretion to impose a longer minimum confinement period than the 30 days allowed by statute when the juvenile court believes that 30 days is not sufficient to hold the juvenile accountable for the new offense. But the majority's concerns are addressed in provisions such as R.C. 2152.16(C) and 2152.19, which direct a juvenile court to consider any prior adjudications when fashioning a disposition for a new adjudication. Nothing in R.C. 5139.52(F) diminishes the juvenile court's authority to impose other terms of institutionalization for newly committed offenses, so the majority's concern that a juvenile will not be held accountable for additional offenses is mistaken.

{¶ 43} Thus, not only is the majority's expansion of judicial discretion unsupported by the plain language of the statutory scheme, it is redundant, as its

purposes are already served by the 30-day "stay" of R.C. 5139.52(F) and statutory directives for new adjudications.

{¶ 44} The majority stresses that nothing in R.C. 5139.52(F) indicates that the child can be reinstitutionalized for a maximum of 30 days. The majority is certainly correct on that point: any child who was originally committed to secure confinement under R.C. 2152.16(A)(1) has a maximum, indefinite term that extends to the child's attainment of 21 years of age, and nothing in R.C. 5139.52(F) allows the trial court to decrease that maximum when the child is returned to commitment under his or her original disposition. By the same token, however, nothing in R.C. 5139.52(F) allows the trial court to take it upon itself to *increase* the mandatory minimum terms provided by R.C. 2152.16(A)(1).

{¶ 45} Discretion to upwardly depart from minimum periods of confinement should not be read into a juvenile dispositional statute, particularly where the General Assembly elsewhere has explicitly evidenced its intent for the court to have such discretion in other dispositional provisions. *See, e.g.*, R.C. 2152.16(A)(1)(b) (for attempted murder or attempted aggravated murder, the sentence prescribed is "a minimum period of *six or seven years as prescribed by the court* and a maximum not to exceed the child's attainment of twenty-one years of age" [emphasis added]) and 2152.16(A)(1)(c) (for certain enumerated felonies, "a minimum period of *one to three years, as prescribed by the court*, and a maximum period not to exceed the child's attainment of twenty-one years of age" [emphasis added]).

{¶ 46} Although the majority finds authority for the juvenile court in the absence of an explicit prohibition from the General Assembly, doing so severely undermines other provisions within the juvenile justice system. For example, although R.C. 2152.16 provides instructions only for the institutionalization of children who have committed felony offenses, nothing in the statute prohibits the court from institutionalizing a child for a misdemeanor offense. But it is well

18

settled that a juvenile court does not have the authority to institutionalize a misdemeanant child, regardless of its discretion to impose any disposition it deems proper. *In re J.W.*, 12th Dist. Butler Nos. CA2004-02-036 and CA2004-03-061, 2004-Ohio-7139, ¶ 16-21; *Wright v. Bower*, 8th Dist. Cuyahoga No. 79794, 2001 WL 824472 (July 16, 2001); *In re T.N.*, 3d Dist. Union No. 14-12-13, 2013-Ohio-135, ¶ 21.

{¶ 47} In R.C. 5139.52(F), the only entity identified as having the discretion to determine the timing of a child's release from an indefinite term of confinement after the 30-day minimum period is the ODYS release authority. The General Assembly easily could have stated that the juvenile court also had the authority to extend a child's term of institutionalization, but the General Assembly chose not to do so.

{¶ 48} When the juvenile court committed H.V. to the custody of ODYS in 2010, it had no authority to impose a definite term of institutionalization and no authority to alter the minimum and maximum terms of the mandatory indefinite sentence provided in R.C. 2152.16(A)(1)(e). It is illogical to assume from a mere lack of explicit prohibition that the juvenile court would later have the discretion to impose a definite term of institutionalization for a supervised-release revocation, even up to the very maximum limits. There is nothing to indicate that the General Assembly intended such a result, particularly in light of the fact that a child institutionalized pursuant to R.C. 5139.52(F) as a result of a supervised-release revocation is not eligible for early release. A provision providing the court with the discretion to impose an irrevocable, definite term of institutionalization for a supervised-release revocation—in excess of any possible term of institutionalization that would have been lawful in the child's original disposition—would completely undermine the purpose of the laws that a juvenile judge is obligated to uphold.

**{¶ 49}** It would be antithetical to the rehabilitative goals of the traditional juvenile system to allow a permanent term of confinement to be imposed prior to the child's reintroduction to an ODYS institutional environment, because at that time, it is not known how the child is going to respond to rehabilitative efforts. Such a disposition would be even more restrictive and punitive than the use of stayed adult sentences in serious-youthful-offender dispositional proceedings, as it would leave a child no motivation to change his or her behavior and meet assigned rehabilitative goals in order to avoid a definite sentence.

**{¶ 50}** If the 30-day-minimum-institutionalization provision in R.C. 5139.52(F) truly allows a trial court to impose any definite term of institutionalization that it deems proper within the range of the child's previous indefinite term, the revocation no longer has the quality of a juvenile disposition. Instead, it is a punitive sentence. The juvenile court has the authority to enforce its own judgment by returning the child to ODYS under the original disposition, and it has the authority to do anything else that might be lawful and proper. But lawful and proper dispositions do not include those in which the court exceeds the dispositional mandates and instructions of the legislature and imposes what is, in essence, a criminal sentence within traditional juvenile proceedings.

**{¶ 51}** I would therefore hold that the juvenile court did not have the power to impose a mandatory minimum institutionalization term of 90 days after ordering H.V.'s return to ODYS to continue serving under his 2010 disposition and would hold that the disposition must be reversed as unlawful.

### The juvenile statutory scheme does not permit a juvenile court to impose an institutionalization term for a supervised-release revocation consecutively to a new term of institutionalization

**{¶ 52}** Just as the phrase "any other disposition * * * that the court considers proper" in R.C. 5139.52(F) is not carte blanche for juvenile courts to disregard other statutory limits, the general reference in R.C. 2152.19(A)(8) to the

juvenile court's authority to make any disposition that it finds proper does not expand what constitutes a lawful disposition under the juvenile statutory scheme. Looking at the more specific terms of R.C. 2152.17, it is clear that the General Assembly has delineated the circumstances under which a court may impose consecutive terms of institutionalization and that the circumstances of H.V.'s dispositions are not among those listed.

{¶ 53} Neither the dispositional provisions of R.C. 2152.16 nor the revocation provisions of R.C. 5139.52 provide the juvenile court with the authority to run institutionalization terms for revocation dispositions consecutively to institutionalization terms for new delinquency dispositions. Most certainly, the juvenile court does not have the "inherent power" to run the terms consecutively, as the Ninth District held in this case. *In re H.V.*, 9th Dist. Lorain Nos. 11CA010139 and 11CA010140, 2012-Ohio-3742, at ¶ 10.

{¶ 54} A court's inherent authority is a power that is neither created nor assailable by acts of the legislature. *Hale v. State*, 55 Ohio St. 210, 215, 45 N.E. 199 (1896). But a juvenile court is a creature of statute and therefore has only such powers as are conferred upon it by the legislature. *See In re Agler*, 19 Ohio St.2d at 72-74, 249 N.E.2d 808. Thus it has little, if any, inherent power.

{¶ 55} It is the legislature that has the authority to define offenses and fix penalties, and it is the legislature that authorizes the judiciary to pass a particular sentence upon an accused. *Ex parte Fleming*, 123 Ohio St. 16, 173 N.E. 441 (1930), at paragraph one of the syllabus; *Ex parte United States*, 242 U.S. 27, 42, 37 S.Ct. 72, 61 L.Ed. 129 (1916). *See also State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 22 ("Judges have no inherent power to create sentences").

{¶ 56} In the face of silence on the issue of consecutive terms of institutionalization, it should not be inferred that a juvenile court has the discretion to order multiple confinement terms to be served consecutively.

Although this court made that inference in *In re Caldwell*, 76 Ohio St.3d 156, 666 N.E.2d 1367 (1996), the circumstances of *Caldwell*, both in law and in fact, are far different from the circumstances of the present case.

**{¶ 57}** In *Caldwell*, the child had been adjudicated delinquent in 1994 in two cases that were heard together. *In re Caldwell*, 10th Dist. Franklin Nos. 94APF07-996 and 94APF07-997, 1995 WL 46199 (Jan. 31, 1995). In the first case, the child was adjudicated delinquent on two fourth-degree felony counts of aggravated vehicular assault, and in the second case, the child was adjudicated delinquent on a third-degree felony count of receiving stolen property. The juvenile court imposed terms of institutionalization for each of the three counts and ordered that they be served consecutively. This court's approval of the juvenile court's dispositional decision was based on the fact that (1) the applicable version of R.C. Chapter 2151 made no mention of consecutive dispositions, (2) the only guidance on the issue was found in the instructions that a court shall "[m]ake any further disposition that the court finds proper" under former R.C. 2151.355(A)(11), Am.Sub.H.B. No. 725, 144 Ohio Laws, Part IV, 6368, 6372, effective April 16, 1993, and (3) future cases would be governed by the then newly amended R.C. 2151.355(B)(2), Am.Sub.H.B. No. 1, 146 Ohio Laws, Part I, 31, 34, effective January 1, 1996, which expressly provided for consecutive terms of confinement in cases such as Caldwell's. *Caldwell*, 76 Ohio St.3d at 158-159, 666 N.E.2d 1367, fn. 1.

**{¶ 58}** *Caldwell* was decided at a time when R.C. Chapter 2151 governed children who were abused, neglected, or dependent, as well as juvenile delinquents. *See In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 9. However, the juvenile statutory scheme was significantly altered in 2002 by the Juvenile Justice Reform Act, Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447. Both bodies of juvenile law were revised, and R.C. Chapter 2152 was enacted to exclusively address juvenile delinquency. *Cross* at ¶ 11.

{¶ 59} *Caldwell* was also decided at a time when Ohio's criminal sentencing code retained the common-law preference for consecutive sentences. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶ 26 (stating that "the common law prefer[red] consecutive sentences over concurrent sentences"). Comprehensive changes were made to the sentencing code by 1995 Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996. For example, R.C. 2929.41(A) was amended to presume that sentences would be served concurrently unless a court stated otherwise. Although R.C. 2929.41(A) was excised by *State v. Foster,* 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the identical language of R.C. 2929.41(A) was reenacted in full by the legislature in 2011 Am.Sub.H.B. No. 86, effective September 30, 2011. Accordingly, a whole host of direct and analogous presumptions that existed at the time of *Caldwell* are no longer valid in the present day.

{¶ 60} Here, we are not facing the same lack of direction on the issue of consecutive terms of confinement in the juvenile statutes as we were in *Caldwell*, and we are also facing a very different juvenile statutory scheme from what existed at the time of *Caldwell*. The General Assembly has now addressed the issue of consecutive terms of confinement for a delinquent child by enacting R.C. 2152.17. Pursuant to R.C. 2152.17(E), if a child is adjudicated a delinquent for a felony and the child also committed one of several enumerated specifications, the child's term of confinement for the specification must be served consecutively to the term of confinement for the underlying delinquent act. And pursuant to R.C. 2152.17(G), the juvenile court may impose consecutive terms of confinement if it adjudicates a child delinquent for multiple felony offenses and commits the child to the legal custody of ODYS for each offense. Neither of those circumstances applies here.

> The Ohio Legislature having dealt with the subject, and having made certain provisions and certain exceptions thereto, it will be presumed that the Legislature has exhausted the legislative intent, and that it has not intended the practice to be extended further than the plain import of the statutes already enacted. The well-known maxim, *expressio unius est exclusio alterius*, applies.

*Madjorous v. State*, 113 Ohio St. 427, 433, 149 N.E. 393 (1925).

{¶ 61} R.C. 2152.17 does not state that a juvenile court is permitted to order that a term of confinement imposed from a revocation disposition be served consecutively to a term of confinement from a new adjudication of delinquency. And this court has no power to create additional juvenile court authority. The extension of authority to impose consecutive confinement terms is a policy matter within the purview of the legislature. *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, ¶ 28 (Lanzinger, J., concurring). Just as the General Assembly amended R.C. Chapter 2152 to allow for consecutive confinement terms in certain circumstances, it could do so for the circumstances in this case.

{¶ 62} We must remain mindful throughout this process that if the juvenile court has decided to utilize the traditional juvenile process rather than bind a juvenile over to adult criminal proceedings, we cannot allow criminal-sentencing notions to creep into our assumptions, and we certainly cannot allow them to creep into our explicit analysis. Instead, we must keep in mind the fundamental rehabilitative purpose of the juvenile justice system. *See In re C.S.*, 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 67.

{¶ 63} If a county prosecuting attorney thinks that a child's offenses are serious enough that the traditional juvenile process will not rehabilitate the child and protect the public and that harsher sanctions should apply, the prosecuting attorney may request serious-youthful-offender proceedings as provided in R.C.

2152.13 or move to bind the child over to adult criminal proceedings as provided in R.C. 2152.12, and the court will grant such requests under the appropriate circumstances. If the minimum confinement period of a possible disposition does not adequately address the concerns voiced by the majority regarding a child's serious, repeated, or escalating criminal conduct, the proper remedy is to use the alternative "graduated sanctions" that are available within the juvenile code. R.C. 2152.01(A). But the court cannot, and should not, change or expand the dispositions available in the juvenile code.

{¶ 64} I would therefore hold that the juvenile court did not have the authority to order that the confinement term imposed for the supervised-release revocation be served consecutively to the confinement term imposed for the new delinquency disposition and that the offending portion of the November 23, 2011 disposition must be reversed as unlawful.

CONCLUSION

{¶ 65} In the end, it may have been a very good idea for H.V. to remain in secure confinement for the term imposed by the juvenile court. But the fact that H.V.'s case does not cry out for a shorter term of institutionalization is irrelevant to the determination whether the juvenile court had statutory authority to act as it did. Unsympathetic circumstances provide a perfect opportunity for bad law—law that will have an adverse impact on more sympathetic cases in the future. But my concern is not solely with the court's trampling on the important public policies behind the juvenile code, e.g., to rehabilitate young offenders. It offends the law and our Constitutions when a judge legislates from the bench in order to increase the confinement period that may be imposed on a child merely because the judge believes that the confinement period allowed under the statute is too lenient in a particular situation. The statutes that govern dispositions in juvenile cases are for the General Assembly, and not judges, to create. Once created,

courts must employ the statutes in order to fashion proper, just sanctions for delinquent youth.

**{¶ 66}** In cases in which we believe that punishment is paramount to rehabilitation, judges must rely on the juvenile statutes that allow for bindover, serious-youthful-offender hybrid sentencing, or any number of additional dispositions, to address cases in which the juvenile presents a risk that cannot be addressed in the juvenile system. Judges cannot, however, alter a statutory scheme in order to fashion a remedy in any given case. Because the majority ignores the proper role of the judicial branch, I dissent.

PFEIFER, J., concurs in the foregoing opinion.

_____

Timothy Young, Ohio Public Defender, and Sheryl Trzaska, Assistant State Public Defender, for appellant.

Dennis P. Will, Lorain County Prosecuting Attorney, and Chris A. Pyanowski, Assistant Prosecuting Attorney, for appellee, the state of Ohio.

_____