O’Connor, C.J.,
dissenting.
{¶ 27} The majority’s decision to affirm the Ninth District Court of Appeals is not supported by the language of the relevant statutes or by the General Assembly’s rationale in enacting those laws.
{¶ 28} The juvenile court did not have the power to designate a mandatory minimum confinement term of 90 days when ordering H.V.’s return to the Ohio Department of Youth Services (“ODYS”) to continue serving under his 2010 disposition, and that portion of the juvenile court’s November 23, 2011 revocation disposition should be reversed as unlawful. And because the juvenile court did not have the power to order H.V. to serve the confinement term imposed for his supervised-release violation consecutively to the confinement term imposed for the new delinquency adjudication, that portion of the November 23, 2011 disposition also should be reversed as unlawful. I therefore dissent.
Analysis
{¶ 29} Upon revocation of a child’s supervised release, a juvenile court has no authority to increase the 30-day mandatory minimum period of confinement set forth in R.C. 5139.52(F). Additionally, in enacting R.C. 2152.17, the General Assembly chose to permit consecutive terms of confinement only for certain enumerated specifications or dispositions involving multiple offenses that would be felonies if committed by an adult, leaving juvenile courts without authority to impose consecutive terms outside of these specified circumstances. The juvenile court therefore acted in excess of its statutory authority when it increased H.V.’s mandatory minimum term of confinement under R.C. 5139.52(F) and imposed consecutive terms of confinement in a way that was not permitted by R.C. 2152.17.
A juvenile court has no authority to increase the statutory minimum term of institutionalization
{¶ 30} The plain language of R.C. 5139.52(F) dictates that once a juvenile’s supervised release is revoked and his original indefinite term of institutionalization is reinstated, a minimum 30-day term of institutionalization arises as a *417 matter of law. By construing the 30-day term in R.C. 5139.52(F) as merely the baseline for the juvenile court’s discretion to impose any minimum term of institutionalization, the majority fails to recognize the significance of minimum and indefinite sentencing provisions in the context of juvenile cases, as well as the significance of statutory limitations on the discretionary authority of both the juvenile court and the ODYS.
{¶ 31} The juvenile justice system exists as “ ‘an uneasy partnership of law and social work,’ ” In re Agler, 19 Ohio St.2d 70, 73, 249 N.E.2d 808 (1969), quoting Whitlatch, The Juvenile Court, 18 W.Res.L.Rev. 1239, 1246 (1967), which serves to both support and correct its wards in an “institutionalized and thus reliable manner,” id. Juvenile proceedings are neither criminal nor penal in nature, and the juvenile justice system must value, above all, the child’s welfare and betterment. See In re C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 66-67.
{¶ 32} The purposes underlying all juvenile dispositions are set forth in R.C. 2152.01(A): “to provide for the care, protection, and mental and physical development of children subject to this chapter [R.C. Chapter 2152], protect the public interest and safety, hold the offender accountable for the offender’s actions, restore the victim, and rehabilitate the offender.” And “[t]hese purposes shall be achieved by a system of graduated sanctions and services.” (Emphasis added.) Id. The various traditional juvenile dispositions available to a trial court are delineated in R.C. 2152.16, 2152.17, 2152.19, and 2152.20. R.C. 2152.02(Z). A child is eligible for harsher sanctions only upon reaching a certain age and for certain serious misconduct. See, e.g., R.C. 2152.11 (serious-youthful-offender dispositions); R.C. 2152.12 (transfer of cases from juvenile to adult criminal proceedings).
{¶ 33} In this case, H.V. was adjudicated through the traditional juvenile process for committing a fourth-degree felony at the age of 15. In fashioning an appropriate disposition for H.V., the juvenile court had a choice among various traditional juvenile dispositions: placement into the legal custody of ODYS for secure confinement, R.C. 2152.16; placement in a detention facility, R.C. 2152.19(A)(3); placement under house arrest, R.C. 2152.19(A)(4)(j); the imposition of fines, R.C. 2152.20(A)(1); and additional options or combinations of options.
{¶ 34} But after the juvenile court chose to place H.V. in the legal custody of ODYS for secure confinement, the court’s discretion regarding that confinement was limited by R.C. 2152.16 and 2152.18. Because H.V. was adjudicated delinquent for a fourth-degree felony, the juvenile court had no discretion to impose anything other than an indefinite term of institutionalization with a minimum period of six months and a maximum period up to H.V.’s 21st birthday. R.C. *418 2152.16(A)(1)(e). The juvenile court was also required to credit H.V. for the 83 days that H.V. spent in a detention home while awaiting the juvenile court’s December 8, 2010 dispositional decision, causing H.V.’s minimum six-month term to expire on or about March 16, 2011. R.C. 2152.18(B).[3]
{¶ 35} Because the juvenile court committed H.V. to the permanent legal custody of ODYS, the court ceased to have jurisdiction over H.V. in relation to the 2010 adjudication, except under limited circumstances. R.C. 2152.22(A). The juvenile court’s jurisdiction became limited to (1) granting judicial release during H.V.’s minimum six-month institutionalization period under certain conditions provided in R.C. 2152.22(B) and (C), (2) granting judicial release at any time after the minimum period under R.C. 2152.22(D), (3) determining whether H.V. violated the terms of his judicial release and, if so, revoking judicial release pursuant to the conditions of R.C. 2152.22(E), and (4) under R.C. 2152.22(H), performing certain judicial functions related to a decision by ODYS to release H.V. and revocation of that release under R.C. 5139.51 and 5139.52. Conversely, upon being granted permanent legal custody of H.V. up to his 21st birthday, ODYS’s authority to determine the trajectory of H.V.’s rehabilitation was plenary, subject to the above limitations provided by statute. R.C. 2152.22(A). Within the parameters of H.V.’s indefinite term of institutionalization, ODYS had the authority to release H.V. at any point that it determined that its rehabilitative efforts had reached a satisfactory end. Ohio Adm.Code 5139-68-03.
{¶ 36} A review of the authority granted to and the constraints placed upon both the juvenile court and ODYS by the legislature requires a conclusion that after the disposition in a traditional juvenile proceeding, the statutes are primarily focused on facilitating the release of the child from confinement. After a child serves a minimum period of confinement, the ODYS has the authority to release the child, even if the juvenile court does not believe that he or she should be released. And the juvenile court can order the child’s release, even if ODYS does not believe that he or she should be released. R.C. 5139.51; 2152.22. Neither of these statutes allows either entity to compel a child’s confinement past the minimum term if the other entity wants him or her to be released.
{¶ 37} This general standard of promoting release from institutionalization is subject to few exceptions, but the revocation-of-supervised-release rule of R.C. 5139.52(F) contains one of those exceptions. The statute provides that after a juvenile court determines that a child has committed a serious violation of the terms and conditions of the child’s supervised release, the juvenile court may return the child to ODYS pursuant to the prior adjudication or it may craft any *419 other disposition that is “authorized by law that the court considers proper.” R.C. 5139.52(F).
{¶ 38} Although the juvenile court’s discretionary authority under the language of R.C. 5139.52(F) seems practically limitless when read out of context, it must be remembered that the juvenile court’s authority under R.C. 5139.52(F) arises only in circumstances in which the court’s general authority has otherwise been extinguished. R.C. 2152.22(A). Because the juvenile court’s authority over the child is restored only to the limited extent provided by R.C. 5139.52(F), the majority’s generosity in construing the court’s discretionary powers is not supported by the statutory scheme. Moreover, just as with H.V.’s original 2010 disposition, when the juvenile court revoked H.V.’s supervised release, the juvenile court had the discretion to choose among various lawful dispositional options, but its discretion became limited by the applicable terms of the option it selected. Thus, once the juvenile court opted to return H.V. to ODYS, the other terms of H.V.’s disposition were controlled by the remainder of the language in R.C. 5139.52(F):
[T]he child shall remain institutionalized for a minimum period of thirty days, [ODYS] shall not reduce the minimum thirty-day period of institutionalization for any time that the child was held in secure custody subsequent to the child’s arrest and pending the revocation hearing and the child’s return to [ODYS], the [ODYS] release authority, in its discretion, may require the child to remain in institutionalization for longer than the minimum thirty-day period, and the child is not eligible for judicial release or early release during the minimum thirty-day period of institutionalization or any period of institutionalization in excess of the minimum thirty-day period.
{¶ 39} When construing this and any other statute, our paramount concern is the legislative intent in enacting the statute, and our interpretation of the specific words used is guided by their plain, customary meaning. Yonkings v. Wilkinson, 86 Ohio St.3d 225, 227, 714 N.E.2d 394 (1999). A plain reading of the terms and modifiers in the above statutory language reveals that the trial court no longer has any control over the length of a child’s confinement after choosing to return the child to the custody of ODYS. It is only ODYS that is authorized to resume its role of carrying out the indefinite term of institutionalization imposed in the original disposition.
{¶ 40} Although the statute states that “the court * * * may * * * order the child to be returned” to ODYS, it does not authorize the court to prescribe a minimum term of institutionalization. R.C. 5139.52(F). Instead, the 30-day- *420 minimum term arises from the statute, and all further references to the juvenile court serve only to vitiate the court’s normal discretionary power to release the child from confinement. Thus the length of the child’s confinement after revocation is not within the trial court’s authority. This makes sense because the revocation is merely a reinstatement of the juvenile court’s previous disposition for the child, and a court has neither the power to alter the terms of the original disposition nor the power to increase the child’s minimum term of confinement.
{¶ 41} The General Assembly’s reason for inserting a minimum-term-of-confinement rule in R.C. 5139.52(F) is clear. The child has necessarily already completed a minimum term of confinement, so both the court and ODYS would ordinarily have the authority to immediately release the child the moment after the child returns to secure confinement. The 30-day rule acts, in effect, as a temporary stay on the release powers that either entity might be able to exercise. The 30-day rule, as well as its provision that prevents ODYS from reducing that 30-day minimum period by crediting the child with the time he or she served, prevents an immediate release from occurring and ensures that a child will be held accountable for the violation of supervised release.
{¶ 42} The majority gives a juvenile court discretion to impose a longer minimum confinement period than the 30 days allowed by statute when the juvenile court believes that 30 days is not sufficient to hold the juvenile accountable for the new offense. But the majority’s concerns are addressed in provisions such as R.C. 2152.16(C) and 2152.19, which direct a juvenile court to consider any prior adjudications when fashioning a disposition for a new adjudication. Nothing in R.C. 5139.52(F) diminishes the juvenile court’s authority to impose other terms of institutionalization for newly committed offenses, so the majority’s concern that a juvenile will not be held accountable for additional offenses is mistaken.
{¶ 43} Thus, not only is the majority’s expansion of judicial discretion unsupported by the plain language of the statutory scheme, it is redundant, as its purposes are already served by the 30-day “stay” of R.C. 5139.52(F) and statutory directives for new adjudications.
{¶ 44} The majority stresses that nothing in R.C. 5139.52(F) indicates that the child can be reinstitutionalized for a maximum of 30 days. The majority is certainly correct on that point: any child who was originally committed to secure confinement under R.C. 2152.16(A)(1) has a maximum, indefinite term that extends to the child’s attainment of 21 years of age, and nothing in R.C. 5139.52(F) allows the trial court to decrease that maximum when the child is returned to commitment under his or her original disposition. By the same token, however, nothing in R.C. 5139.52(F) allows the trial court to take it upon itself to increase the mandatory minimum terms provided by R.C. 2152.16(A)(1).
*421 {¶ 45} Discretion to upwardly depart from minimum periods of confinement should not be read into a juvenile dispositional statute, particularly where the General Assembly elsewhere has explicitly evidenced its intent for the court to have such discretion in other dispositional provisions. See, e.g., R.C. 2152.16(A)(1)(b) (for attempted murder or attempted aggravated murder, the sentence prescribed is “a minimum period of six or seven years as prescribed by the court and a maximum not to exceed the child’s attainment of twenty-one years of age” [emphasis added]) and 2152.16(A)(1)(c) (for certain enumerated felonies, “a minimum period of one to three years, as prescribed by the court, and a maximum period not to exceed the child’s attainment of twenty-one years of age” [emphasis added]).
{¶ 46} Although the majority finds authority for the juvenile court in the absence of an explicit prohibition from the General Assembly, doing so severely undermines other provisions within the juvenile justice system. For example, although R.C. 2152.16 provides instructions only for the institutionalization of children who have committed felony offenses, nothing in the statute prohibits the court from institutionalizing a child for a misdemeanor offense. But it is well settled that a juvenile court does not have the authority to institutionalize a misdemeanant child, regardless of its discretion to impose any disposition it deems proper. In re J.W., 12th Dist. Butler Nos. CA2004-02-036 and CA200403-061, 2004-Ohio-7139, 2004 WL 3015755, ¶ 16-21; Wright v. Bower, 8th Dist. Cuyahoga No. 79794, 2001 WL 824472 (July 16, 2001); In re T.N., 3d Dist. Union No. 14-12-13, 2013-Ohio-135, 2013 WL 221475, ¶ 21.
{¶ 47} In R.C. 5139.52(F), the only entity identified as having the discretion to determine the timing of a child’s release from an indefinite term of confinement after the 30-day minimum period is the ODYS release authority. The General Assembly easily could have stated that the juvenile court also had the authority to extend a child’s term of institutionalization, but the General Assembly chose not to do so.
{¶ 48} When the juvenile court committed H.V. to the custody of ODYS in 2010, it had no authority to impose a definite term of institutionalization and no authority to alter the minimum and maximum terms of the mandatory indefinite sentence provided in R.C. 2152.16(A)(1)(e). It is illogical to assume from a mere lack of explicit prohibition that the juvenile court would later have the discretion to impose a definite term of institutionalization for a supervised-release revocation, even up to the very maximum limits. There is nothing to indicate that the General Assembly intended such a result, particularly in light of the fact that a child institutionalized pursuant to R.C. 5139.52(F) as a result of a supervised-release revocation is not eligible for early release. A provision providing the court with the discretion to impose an irrevocable, definite term of institutionali *422 zation for a supervised-release revocation — in excess of any possible term of institutionalization that would have been lawful in the child’s original disposition — would completely undermine the purpose of the laws that a juvenile judge is obligated to uphold.
{¶ 49} It would be antithetical to the rehabilitative goals of the traditional juvenile system to allow a permanent term of confinement to be imposed prior to the child’s reintroduction to an ODYS institutional environment, because at that time, it is not known how the child is going to respond to rehabilitative efforts. Such a disposition would be even more restrictive and punitive than the use of stayed adult sentences in serious-youthful-offender dispositional proceedings, as it would leave a child no motivation to change his or her behavior and meet assigned rehabilitative goals in order to avoid a definite sentence.
{¶ 50} If the 30-day-minimum-institutionalization provision in R.C. 5139.52(F) truly allows a trial court to impose any definite term of institutionalization that it deems proper within the range of the child’s previous indefinite term, the revocation no longer has the quality of a juvenile disposition. Instead, it is a punitive sentence. The juvenile court has the authority to enforce its own judgment by returning the child to ODYS under the original disposition, and it has the authority to do anything else that might be lawful and proper. But lawful and proper dispositions do not include those in which the court exceeds the dispositional mandates and instructions of the legislature and imposes what is, in essence, a criminal sentence within traditional juvenile proceedings.
{¶ 51} I would therefore hold that the juvenile court did not have the power to impose a mandatory minimum institutionalization term of 90 days after ordering H.V.’s return to ODYS to continue serving under his 2010 disposition and would hold that the disposition must be reversed as unlawful.
The juvenile statutory scheme does not permit a juvenile court to impose an institutionalization term for a supervised-release revocation consecutively to a new term of institutionalization
{¶ 52} Just as the phrase “any other disposition * * * that the court considers proper” in R.C. 5139.52(F) is not carte blanche for juvenile courts to disregard other statutory limits, the general reference in R.C. 2152.19(A)(8) to the juvenile court’s authority to make any disposition that it finds proper does not expand what constitutes a lawful disposition under the juvenile statutory scheme. Looking at the more specific terms of R.C. 2152.17, it is clear that the General Assembly has delineated the circumstances under which a court may impose consecutive terms of institutionalization and that the circumstances of H.V.’s dispositions are not among those listed.
*423 {¶ 53} Neither the dispositional provisions of R.C. 2152.16 nor the revocation provisions of R.C. 5139.52 provide the juvenile court with the authority to run institutionalization terms for revocation dispositions consecutively to institutionalization terms for new delinquency dispositions. Most certainly, the juvenile court does not have the “inherent power” to run the terms consecutively, as the Ninth District held in this case. In re H.V., 9th Dist. Lorain Nos. 11CA010139 and 11CA010140, 2012-Ohio-3742, 2012 WL 3553399, at ¶ 10.
{¶ 54} A court’s inherent authority is a power that is neither created nor assailable by acts of the legislature. Hale v. State, 55 Ohio St. 210, 215, 45 N.E. 199 (1896). But a juvenile court is a creature of statute and therefore has only such powers as are conferred upon it by the legislature. See In re Agler, 19 Ohio St.2d at 72-74, 249 N.E.2d 808. Thus it has little, if any, inherent power.
{¶ 55} It is the legislature that has the authority to define offenses and fix penalties, and it is the legislature that authorizes the judiciary to pass a particular sentence upon an accused. Ex parte Fleming, 123 Ohio St. 16, 173 N.E. 441 (1930), at paragraph one of the syllabus; Ex parte United States, 242 U.S. 27, 42, 37 S.Ct. 72, 61 L.Ed. 129 (1916). See also State v. Fischer, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 22 (“Judges have no inherent power to create sentences”).
{¶ 56} In the face of silence on the issue of consecutive terms of institutionalization, it should not be inferred that a juvenile court has the discretion to order multiple confinement terms to be served consecutively. Although this court made that inference in In re Caldwell, 76 Ohio St.3d 156, 666 N.E.2d 1367 (1996), the circumstances of Caldwell, both in law and in fact, are far different from the circumstances of the present case.
{¶ 57} In Caldwell, the child had been adjudicated delinquent in 1994 in two cases that were heard together. In re Caldwell, 10th Dist. Franklin Nos. 94APF07-996 and 94APF07-997, 1995 WL 46199 (Jan. 31, 1995). In the first case, the child was adjudicated delinquent on two fourth-degree felony counts of aggravated vehicular assault, and in the second case, the child was adjudicated delinquent on a third-degree felony count of receiving stolen property. The juvenile court imposed terms of institutionalization for each of the three counts and ordered that they be served consecutively. This court’s approval of the juvenile court’s dispositional decision was based on the fact that (1) the applicable version of R.C. Chapter 2151 made no mention of consecutive dispositions, (2) the only guidance on the issue was found in the instructions that a court shall “[m]ake any further disposition that the court finds proper” under former R.C. 2151.355(A)(11), Am.Sub.H.B. No. 725, 144 Ohio Laws, Part IV, 6368, 6372, effective April 16,1993, and (3) future cases would be governed by the then newly amended R.C. 2151.355(B)(2), Am.Sub.H.B. No. 1, 146 Ohio Laws, Part I, 31, 34, *424 effective January 1, 1996, which expressly provided for consecutive terms of confinement in cases such as Caldwell’s. Caldwell, 76 Ohio St.3d at 158-159, 666 N.E.2d 1367, fn. 1.
{¶ 58} Caldwell was decided at a time when R.C. Chapter 2151 governed children who were abused, neglected, or dependent, as well as juvenile delinquents. See In re Cross, 96 Ohio St.3d 328, 2002-Ohio-4183, 774 N.E.2d 258, ¶ 9. However, the juvenile statutory scheme was significantly altered in 2002 by the Juvenile Justice Reform Act, Am.Sub.S.B. No. 179,148 Ohio Laws, Part IV, 9447. Both bodies of juvenile law were revised, and R.C. Chapter 2152 was enacted to exclusively address juvenile delinquency. Cross at ¶ 11.
{¶ 59} Caldwell was also decided at a time when Ohio’s criminal sentencing code retained the common-law preference for consecutive sentences. State v. Hodge, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, ¶ 26 (stating that “the common law preferred] consecutive sentences over concurrent sentences”). Comprehensive changes were made to the sentencing code by 1995 Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996. For example, R.C. 2929.41(A) was amended to presume that sentences would be served concurrently unless a court stated otherwise. Although R.C. 2929.41(A) was excised by State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, the identical language of R.C. 2929.41(A) was reenacted in full by the legislature in 2011 Am.Sub.H.B. No. 86, effective September 30, 2011. Accordingly, a whole host of direct and analogous presumptions that existed at the time of Caldwell are no longer valid in the present day.
{¶ 60} Here, we are not facing the same lack of direction on the issue of consecutive terms of confinement in the juvenile statutes as we were in Caldwell, and we are also facing a very different juvenile statutory scheme from what existed at the time of Caldwell. The General Assembly has now addressed the issue of consecutive terms of confinement for a delinquent child by enacting R.C. 2152.17. Pursuant to R.C. 2152.17(E), if a child is adjudicated a delinquent for a felony and the child also committed one of several enumerated specifications, the child’s term of confinement for the specification must be served consecutively to the term of confinement for the underlying delinquent act. And pursuant to R.C. 2152.17(G), the juvenile court may impose consecutive terms of confinement if it adjudicates a child delinquent for multiple felony offenses and commits the child to the legal custody of ODYS for each offense. Neither of those circumstances applies here.
The Ohio Legislature having dealt with the subject, and having made certain provisions and certain exceptions thereto, it will be presumed that the Legislature has exhausted the legislative intent, and that it has not *425 intended the practice to be extended further than the plain import of the statutes already enacted. The well-known maxim, expressio unius est exdusio alterius, applies.
Madjorous v. State, 113 Ohio St. 427, 433, 149 N.E. 393 (1925).
{¶ 61} R.C. 2152.17 does not state that a juvenile court is permitted to order that a term of confinement imposed from a revocation disposition be served consecutively to a term of confinement from a new adjudication of delinquency. And this court has no power to create additional juvenile court authority. The extension of authority to impose consecutive confinement terms is a policy matter within the purview of the legislature. In re M.W., 133 Ohio St.3d 309, 2012-Ohio-4538, 978 N.E.2d 164, ¶ 28 (Lanzinger, J., concurring). Just as the General Assembly amended R.C. Chapter 2152 to allow for consecutive confinement terms in certain circumstances, it could do so for the circumstances in this case.
{¶ 62} We must remain mindful throughout this process that if the juvenile court has decided to utilize the traditional juvenile process rather than bind a juvenile over to adult criminal proceedings, we cannot allow criminal-sentencing notions to creep into our assumptions, and we certainly cannot allow them to creep into our explicit analysis. Instead, we must keep in mind the fundamental rehabilitative purpose of the juvenile justice system. See In re C.S., 115 Ohio St.3d 267, 2007-Ohio-4919, 874 N.E.2d 1177, ¶ 67.
{¶ 63} If a county prosecuting attorney thinks that a child’s offenses are serious enough that the traditional juvenile process will not rehabilitate the child and protect the public and that harsher sanctions should apply, the prosecuting attorney may request serious-youthful-offender proceedings as provided in R.C. 2152.13 or move to bind the child over to adult criminal proceedings as provided in R.C. 2152.12, and the court will grant such requests under the appropriate circumstances. If the minimum confinement period of a possible disposition does not adequately address the concerns voiced by the majority regarding a child’s serious, repeated, or escalating criminal conduct, the proper remedy is to use the alternative “graduated sanctions” that are available within the juvenile code. R.C. 2152.01(A). But the court cannot, and should not, change or expand the dispositions available in the juvenile code.
{¶ 64} I would therefore hold that the juvenile court did not have the authority to order that the confinement term imposed for the supervised-release revocation be served consecutively to the confinement term imposed for the new delinquency disposition and that the offending portion of the November 23, 2011 disposition must be reversed as unlawful.
*426 Timothy Young, Ohio Public Defender, and Sheryl Trzaska, Assistant State Public Defender, for appellant.
Dennis P. Will, Lorain County Prosecuting Attorney, and Chris A. Pyanowski, Assistant Prosecuting Attorney, for appellee, the state of Ohio.
Conclusion
{¶ 65} In the end, it may have been a very good idea for H.V. to remain in secure confinement for the term imposed by the juvenile court. But the fact that H.V.’s case does not cry out for a shorter term of institutionalization is irrelevant to the determination whether the juvenile court had statutory authority to act as it did. Unsympathetic circumstances provide a perfect opportunity for bad law— law that will have an adverse impact on more sympathetic cases in the future. But my concern is not solely with the court’s trampling on the important public policies behind the juvenile code, e.g., to rehabilitate young offenders. It offends the law and our Constitutions when a judge legislates from the bench in order to increase the confinement period that may be imposed on a child merely because the judge believes that the confinement period allowed under the statute is too lenient in a particular situation. The statutes that govern dispositions in juvenile cases are for the General Assembly, and not judges, to create. Once created, courts must employ the statutes in order to fashion proper, just sanctions for delinquent youth.
{¶ 66} In cases in which we believe that punishment is paramount to rehabilitation, judges must rely on the juvenile statutes that allow for bindover, serious-youthful-offender hybrid sentencing, or any number of additional dispositions, to address cases in which the juvenile presents a risk that cannot be addressed in the juvenile system. Judges cannot, however, alter a statutory scheme in order to fashion a remedy in any given case. Because the majority ignores the proper role of the judicial branch, I dissent.
Pfeifer, J., concurs in the foregoing opinion.

. The majority implies in ¶ 3 that ODYS permitted H.V.’s release after he had served only three months toward his six-month mandatory minimum term. This implication is patently incorrect.